## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JANE DOE and JOHN DOE,<br><br>*Plaintiffs,*<br><br>v.<br><br>EASTERN ATLANTIC STATES COUNCIL OF CARPENTERS; EASTERN ATLANTIC STATES CARPENTERS HEALTH FUND; EASTERN ATLANTIC STATES COUNCIL OF CARPENTERS, LOCAL 251; WESTERN PENNSYLVANIA REGIONAL DISTRICT COUNCIL; EASTERN ATLANTIC STATES CARPENTERS TECHNICAL CENTERS; UNITED BROTHERHOOD OF CARPENTERS AND JOINERS OF AMERICA; ASSOCIATED CONSTRUCTION CARPENTERS OF NEW JERSEY; GENERAL BUILDING CONTRACTORS ASSOCIATION; and INDEPENDENCE BLUE CROSS,<br><br>*Defendants.* | Case No. _____ |

## **COMPLAINT**

Plaintiffs, Jane Doe and John Doe, by and through their undersigned counsel, Justin Robinette, Esquire, seek to proceed anonymously in the instant action, and hereby submit and file the instant Complaint against Defendants, Eastern Atlantic States Council of Carpenters; Eastern Atlantic States Carpenters Health Fund; Eastern Atlantic States Council of Carpenters, Local 251; Western Pennsylvania Regional District Council; Eastern Atlantic States Carpenters Technical Centers; United States Brotherhood of Carpenters and Joiners of America; Associated Construction Carpenters of New Jersey; General Building Contractors Association; and Independence Blue Cross. Plaintiffs, Jane Doe and John Doe, hereby state in support thereof, as follows:

## I.    THE PARTIES:

1.    Plaintiff, Jane Doe, is a citizen and resident of the State of Delaware, residing at ███████████ ████████████████. Plaintiff has redacted her name and address from the pleadings consistent with the Motion to Proceed Anonymously filed on this same date.  Plaintiff has not previously filed a lawsuit against Independence Blue Cross or against any of the Defendants prior to filing the instant lawsuit.

2.    Plaintiff, John Doe, is a citizen and resident of the State of Delaware, residing at ██████████ ████████████████  Plaintiff has redacted his name and address from the pleadings consistent with the Motion to Proceed Anonymously filed on this same date.  Plaintiff has not previously filed a lawsuit against Independence Blue Cross or against any of the Defendants prior to filing the instant lawsuit.

3.    Plaintiff, John Doe, at all times relevant hereto, reported to the union hall of Defendants, Eastern Atlantic States Council of Carpenters; Eastern Atlantic States Council of Carpenters, Local 251; Western Pennsylvania Regional District Council; Eastern Atlantic States Carpenters Technical Centers; United States Brotherhood of Carpenters and Joiners of America; Associated Construction Carpenters of New Jersey; and/or General Building Contractors Association, that was located at 1803 Spring Garden Street, Philadelphia, PA 19130.

4.    Plaintiff, Jane Doe, is identified as a beneficiary on the health insurance plan of her partner, Plaintiff, John Doe, who, at all times relevant hereto, was a member in good standing of Defendants' labor organization, Eastern Atlantic States Council of Carpenters; Eastern Atlantic States Council of Carpenters, Local 251; Western Pennsylvania Regional District Council; Eastern Atlantic States Carpenters Technical Centers; United States Brotherhood of Carpenters and Joiners of America; Associated Construction Carpenters of New Jersey;

and/or General Building Contractors Association.

5.    Defendant/s, Eastern Atlantic States Council of Carpenters; Eastern Atlantic States Council of Carpenters, Local 251; Western Pennsylvania Regional District Council; Eastern Atlantic States Carpenters Technical Centers; United States Brotherhood of Carpenters and Joiners of America; Associated Construction Carpenters of New Jersey; and/or General Building Contractors Association, is a labor organization of which, at all times relevant hereto, Plaintiff, John Doe, was a member.  The labor organization, Eastern Atlantic States Council of Carpenters; Eastern Atlantic States Council of Carpenters, Local 251; Western Pennsylvania Regional District Council; Eastern Atlantic States Carpenters Technical Centers; United States Brotherhood of Carpenters and Joiners of America; Associated Construction Carpenters of New Jersey; and/or General Building Contractors Association, at all times relevant hereto, maintained a headquarters, principal office, and/or principal place of business located at 1803 Spring Garden Street, Philadelphia, PA 19130.  Plaintiff, John Doe's, union hall, where he reported, at all times relevant hereto, was located at 1803 Spring Garden Street, Philadelphia, PA 19130.

6.    Defendant, Eastern Atlantic States Carpenters Health Fund, is believed and averred to be the name of the fund established according to the Employee Retirement Income Security Act ("ERISA") by the labor organization, Eastern Atlantic States Council of Carpenters; Eastern Atlantic States Council of Carpenters, Local 251; Western Pennsylvania Regional District Council; Eastern Atlantic States Carpenters Technical Centers; United States Brotherhood of Carpenters and Joiners of America; Associated Construction Carpenters of New Jersey; and/or General Building Contractors Association.  Defendant, Eastern Atlantic States Carpenters Health Fund, is believed and averred to be responsible for paying for insurance offered to members of the aforementioned labor organization.  Defendant,

Eastern Atlantic States Carpenters Health Fund, has a headquarters, principal office, and principal place of business located at 1811 Spring Garden Street, Philadelphia, PA 19130. In the alternative, Defendant, Eastern Atlantic States Carpenters Health Fund, is a fund established to pay for insurance offered to members of the aforementioned labor organization, with a headquarters and principal place of business located at 1811 Spring Garden Street, Philadelphia, PA 19130.

7.    At all relevant times hereto, it is believed and averred that Defendants, Western Pennsylvania Regional District Council; Eastern Atlantic States Carpenters Technical Centers; United States Brotherhood of Carpenters and Joiners of America; Associated Construction Carpenters of New Jersey; and/or General Building Contractors Association, comprised the labor organization of which Plaintiff, John Doe, was a member, and which offered insurance to Plaintiff, John Doe, for the benefit of Plaintiff, Jane Doe.

8.    Defendant, Independence Blue Cross (hereinafter "Independence Blue Cross" or "IBX"), is a health insurance company with its headquarters, principal office, and principal place of business located at 1901 Market Street, Philadelphia, PA 19103.  Defendant, Independence Blue Cross, at all times relevant hereto, underwrote and administered the health insurance plan offered to members and/or beneficiaries of Defendants, Eastern Atlantic States Council of Carpenters; Eastern Atlantic States Council of Carpenters, Local 251; Western Pennsylvania Regional District Council; Eastern Atlantic States Carpenters Technical Centers; United States Brotherhood of Carpenters and Joiners of America; Associated Construction Carpenters of New Jersey; and/or General Building Contractors Association, including to Plaintiff, John Doe, who was a member, for the benefit of Plaintiff, Jane Doe, who was a beneficiary.  The benefits were funded by Defendant, Eastern Atlantic States Carpenters Health Fund.

4

## II.  JURISDICTION AND VENUE:

9.  This Court has subject matter jurisdiction over the parties and over the claims pled herein including pursuant to 28 U.S.C. § 1331 as the claims herein present a Federal question.

10.  This Court has supplemental jurisdiction over the related state law claims pled herein pursuant to 28 U.S.C. § 1367(a) pursuant to the Philadelphia Fair Practices Ordinance ("PFPO").

11.  This Court has jurisdiction over Defendants because Defendants' contacts with this state and judicial district are sufficient for the exercise of jurisdiction over Defendants to comply with traditional notions of fair play and substantial justice satisfying the standard set forth by the Supreme Court of the United States in *International Shoe Company v. State of Washington*, 326 U.S. 310 (1945), and its progeny.

12.  Venue is proper in this Court pursuant to Title VII of the Civil Rights Act of 1964's specific venue statute at 42 U.S.C. § 2000e-5(f)(3).  42 U.S.C. § 2000e-5(f)(3) provides, in pertinent part, as follows:  "Such an action may be brought in any judicial district in the State in which the unlawful employment practice is alleged to have been committed, in the judicial district in which the employment records relevant to such practice are maintained and administered, or in the judicial district in which the aggrieved person would have worked but for the alleged unlawful employment practice, but if the respondent is not found within any such district, such an action may be brought within the judicial district in which the respondent has its principal office."  42 U.S.C. § 2000e-5(f)(3).  In the instant case, the State in which the unlawful employment practice is alleged to have been committed is the Commonwealth of Pennsylvania; the judicial district in which the employment records relevant to such practice are maintained or administered is in this judicial district, the United States District Court for the Eastern District of Pennsylvania, specifically, Philadelphia, Pennsylvania; the aggrieved

individual, Plaintiff, John Doe, would have worked in the instant judicial district, specifically, Philadelphia, Pennsylvania; Defendant, Independence Blue Cross, has its principal office in this judicial district, specifically, Philadelphia, Pennsylvania; Defendant, Eastern Atlantic States Carpenters Health Fund has its principal place of business in this judicial district, specifically, Philadelphia, Pennsylvania; and Defendant, Eastern Atlantic States Council of Carpenters, has the principal office for its union hall located in this judicial district, specifically, Philadelphia, Pennsylvania.

13. Venue is also proper in this Court pursuant to the general venue statute at 28 U.S.C. § 1391(b).

14. Under 28 U.S.C. § 1391(b)(1), venue is proper in this judicial district because Defendants are deemed to reside in this judicial district. *See* 28 U.S.C. § 1391(b)(1).

15. Defendants are deemed to reside in this judicial district pursuant to 28 U.S.C. § 1391(c)(2) which provides, in pertinent part:

> (c) Residency.—For all venue purposes—
>
> …
>
> (2) an entity with the capacity to sue and be sued in its common name under applicable law, whether or not incorporated, shall be deemed to reside, if a defendant, in any judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question … .

28 U.S.C. § 1391(c)(2).

16. Under 28 U.S.C. § 1391(b)(2), venue is also proper in this judicial district because "a substantial part of the events or omissions giving rise to the claim occurred" in this judicial district. 28 U.S.C. § 1391(b)(2).

17. At all times relevant hereto, Defendants are believed and averred to have each employed fifteen (15) or more employees for each working day in each of twenty (20) or more calendar

weeks in the current or preceding calendar year.

### III.    EXHAUSTION OF APPLICABLE ADMINISTRATIVE REMEDIES:

18.    Plaintiffs', Jane Doe and John Doe's, Notices of Right-to-Sue from the Equal Employment Opportunity Commission ("EEOC") in this matter are attached hereto respectively as Exhibits "A" and "B." Plaintiffs' names and Plaintiffs' address have been redacted where appropriate from Exhibits "A" and "B" consistent with the Plaintiffs' Motion to Proceed Anonymously filed on this same date.

19.    Plaintiffs have exhausted all applicable administrative remedies related hereto.

### IV.    MATERIAL FACTS:

20.    Plaintiff, Jane Doe, is a beneficiary on the health insurance plan sponsored, selected, and designed by Defendants, Eastern Atlantic States Council of Carpenters; Eastern Atlantic States Council of Carpenters, Local 251; Western Pennsylvania Regional District Council; Eastern Atlantic States Carpenters Technical Centers; United States Brotherhood of Carpenters and Joiners of America; Associated Construction Carpenters of New Jersey; and/or General Building Contractors Association, which, at all times relevant hereto, contained an exclusion for facial feminization surgery, hair transplant, and related procedures when sought as gender affirming care, or, in other words, to treat gender dysphoria ("GD").

21.    "Gender identity" is a clear and well-established medical concept that refers to one's internal sense of oneself as having a particular gender or no gender.

22.    Although many people who are designated male at birth based on external anatomy identify with the male gender, there are also people who do not identify with the sex that was assigned to them at birth. Transgender women are women who were assigned the sex of male at birth but identify with a female gender identity, and transgender men are men who were assigned the sex of female at birth but identify with a male gender identity.

23. There are transgender people who experience feelings of incongruence between their gender identity and the sex they were assigned at birth, and experience distress as a result of that incongruence, which are symptoms of a medical condition recognized clinically as gender dysphoria ("GD").

24. Gender dysphoria or "GD" is a serious medical condition codified in the *Diagnostic and Statistical Manual of Mental Disorders,* 5th ed. (the "DSM-V," or the "DSM-5") and the *International Classification of Diseases* (the "ICD-10").

25. Gender dysphoria, or "GD," is a medical and therapeutic diagnosis "associated with clinically significant distress or impairment in social, occupational, or other important areas of functioning" for a person who is transgender. *See Diagnostic and Statistical Manual of Mental Disorders*, 5th ed. ("DSM-V" or "DSM-5") at 302.85; *see also* Coleman, E., *et al.*, Standards of Care for the Health of Transgender and Gender Diverse People, Version 8, *International Journal of Transgender Health*, 23(S1) (2022).

26. Various medical procedures, like facial feminization surgery, or "FFS," hair transplant, and the procedures related thereto are available to assist transgender women to ensure a body that is more in congruence with their gender identity and permit them to engage in and function in society and at work. These procedures may also alleviate gender dysphoria.

27. The widely accepted standards of care for treatment of gender dysphoria are published by the World Professional Association for Transgender Health ("WPATH"). The WPATH Standards of Care have been recognized as the authoritative standards of care by leading health organizations for people who are transgender and suffer from gender dysphoria, including by the United States Department of Health and Human Services, by Federal courts, and by the Pennsylvania Department of Human Services. Under the WPATH standards of

care, medically necessary treatments for gender dysphoria may require facial feminization surgery, hair transplant, and the procedures related thereto.

28. The demarcation between "necessity" and "cosmetic" in transgender healthcare based on specific body parts is in direct opposition to the scientific community's understanding of gender dysphoria and professional guidelines for transgender health. According to the relevant scientific literature on the subject:

> While cosmetic surgery is intended to produce beauty, FFS [facial feminization surgery] is undertaken to produce femaleness. Like GRS [genital reconstruction surgery], FFS is intended to transform the patient's gender from male to female. FFS is not driven by a desire to achieve cosmetic improvement; it is driven by a desire to obtain a body that enables one to engage and function in society.
>
> There are many examples of when evidence regarding the impact of a given procedure on quality of life has led to changes in insurance coverage and reclassification of a procedure from "cosmetic" to "necessary." Breast augmentation is considered a cosmetic procedure and not covered by insurance but reconstructive breast surgery for cancer patients that have undergone mastectomies is considered medically necessary and therefore a covered service. Similarly, we no longer consider facial surgery for victims of extensive burns to be "cosmetic." So too should FFS no longer be considered cosmetic but medically necessary.

*Facial Feminization Surgery: The Ethics of Gatekeeping in Transgender Health*, Am. J. Bioeth. Dec. 2018, 18(12): 3–9.

29. According to every leading major medical organization and the overwhelming consensus among medical experts, treatment of gender dysphoria, including surgical procedures such as FFS procedures and related procedures, are effective, safe, and medically necessary when clinically indicated to alleviate gender dysphoria.

30. At all times relevant hereto, Defendants, Eastern Atlantic States Council of Carpenters; Eastern Atlantic States Council of Carpenters, Local 251; Western Pennsylvania Regional District Council; Eastern Atlantic States Carpenters Technical Centers; United States Brotherhood of Carpenters and Joiners of America; Associated Construction Carpenters of New Jersey; and/or General Building Contractors Association, comprised the labor

9

organization responsible for the provision of benefits to Plaintiff, John Doe, for the benefit of Plaintiff, Jane Doe. The Defendants are required by Federal, state, and City anti-discrimination laws to make insurance coverage available to individuals who are transgender, gender non-conforming, and/or who are diagnosed with gender dysphoria ("GD"), on an equal and non-discriminatory basis.

31. Defendant, Eastern Atlantic States Carpenters Health Fund, or the "EASC Health Fund," is alleged to be an agent of the aforementioned employer and/or labor organization, Eastern Atlantic States Council of Carpenters; Eastern Atlantic States Council of Carpenters, Local 251; Western Pennsylvania Regional District Council; Eastern Atlantic States Carpenters Technical Centers; United States Brotherhood of Carpenters and Joiners of America; Associated Construction Carpenters of New Jersey; and/or General Building Contractors Association, and/or alleged to be a benefit fund liable to Plaintiffs pursuant to *Doe v. Commonwealth of Pennsylvania*, 582 F. Supp. 3d 206 (M.D. Pa. 2022). It is alleged that Defendant, Eastern Atlantic States Carpenters Health Fund, was created by Defendants, Eastern Atlantic States Council of Carpenters; Eastern Atlantic States Council of Carpenters, Local 251; Western Pennsylvania Regional District Council; Eastern Atlantic States Carpenters Technical Centers; United States Brotherhood of Carpenters and Joiners of America; Associated Construction Carpenters of New Jersey; and/or General Building Contractors Association, to hold the funds that would pay for the covered services of the health benefit plan. It is alleged that Defendant, Eastern Atlantic States Carpenters Health Fund, funded the relevant health insurance plan at issue.

32. Plaintiff, Jane Doe, is transgender, and, at all times relevant hereto, was clinically diagnosed with gender dysphoria ("GD"), and has clinically significant distress associated with being transgender.

33. The substantial limitation on Plaintiff, Jane Doe's, interaction with others is characterized on a regular basis by severe problems in primarily social and occupational functioning of which Ms. Doe was diagnosed on account of her gender dysphoria.

34. At all times relevant hereto, Defendant, Independence Blue Cross, had in place a policy of health insurance (hereinafter "the Medical Policy," "the Medical Policy Bulletin," or "the Policy") to insure members and/or beneficiaries of Defendants including Plaintiffs for health insurance.  A true and correct copy of the "Commercial Medical Policy," or "Medical Policy Bulletin," for "Treatment of Gender Dysphoria," in place at the relevant time, is attached hereto as Exhibit "C."

35. Plaintiff sought timely pre-clearance or pre-authorization with Defendant, Independence Blue Cross, under the Defendants' health benefit plan, for coverage for facial feminization surgery ("FFS"), hair transplant, and related procedures.

36. Prior to seeking pre-authorization or pre-clearance for facial feminization surgery, Plaintiff, Jane Doe, effected a legal name change, a gender-marker change, has lived her life in the preferred gender of female, and has undergone other gender affirming procedures.  Plaintiff is seeking to complete her transition by undergoing the final stage of her transition which consists of facial feminization, hair transplant, and related procedures.

37. Plaintiff, Jane Doe's, surgeon, and separately, a licensed social worker, provided medical support to Defendant, Independence Blue Cross, recommending that the facial feminization procedures were medically necessary for her, and recommending that she should undergo the procedures.

38. More specifically, on May 16, 2025, Defendant, Independence Blue Cross, provided Plaintiff, Jane Doe, with an Initial Denial Letter denying her request for pre-authorization for facial feminization surgery on the basis that such surgery was cosmetic and not medically

11

necessary which is not accurate, is not in accordance with the World Professional Association for Transgender Health ("WPATH") guidelines or the medical consensus on the subject matter, and constitutes discrimination.

39. The facial feminization surgeries sought by Plaintiff, Jane Doe, which were wrongfully denied by Defendants on account of discrimination included several procedures including, for example, fat grafting and liposuction of the face, injections to the face, a rhytidectomy of the cheek, chin, and neck, a reduction of the masseter muscle and bone, malar augmentation using prosthetic material, suction-assisted lipectomy of the head and neck, and punch grafts for purposes of performing hair transplant procedures, among other procedures.

40. Defendant, Independence Blue Cross, denied the Plaintiff, Jane Doe's, claim by stating to Plaintiff that there was an alleged lack of a "functional impairment," when there was not. However, Defendant, Independence Blue Cross, is not correctly applying the definition of "gender dysphoria" as contained in the Defendant, Independence Blue Cross's, Medical Policy Bulletin which defines "gender dysphoria" as, "Clinically significant distress or impairment in social, school, or other important areas of functioning." *See* Medical Policy Bulletin, at Exhibit "C," pages 4-5. Therefore, impairments in social and occupational functioning were sufficient under the policy for purposes of stating a claim for coverage. However, Defendant, Independence Blue Cross, still denied the claim. Plaintiffs allege the denial constitutes illegal discrimination based on sex, gender identity, and disability (gender dysphoria).

41. Plaintiff, Jane Doe, subsequently appealed the discriminatory denial of coverage contained in the Defendant, Independence Blue Cross's, Initial Denial Letter to Plaintiff. Defendant, Independence Blue Cross, nevertheless upheld the decision to wrongfully deny Plaintiff, Jane Doe, coverage on appeal.

12

42. Plaintiff, Jane Doe, submitted a request for a further external review of the decision which was controlled by Defendant, Independence Blue Cross. It was not truly independent. The external review was still denied. Plaintiff, Jane Doe's, request was denied, she contends, on account of discrimination against her based on sex, gender identity, impermissible gender stereotypes, and disability (gender dysphoria).

43. Before being forced to institute this litigation, Plaintiff, Jane Doe, even filed a civil rights complaint internally with Defendant, Independence Blue Cross, as was indicated could be done in the policy. However, Plaintiff, Jane Doe's, efforts were futile. Defendant, Independence Blue Cross, found there to be no discrimination, and no civil rights violation, with respect to the denial, and wrongfully upheld the denial of the claim. However, Defendant, Independence Blue Cross's, actions clearly constitute discrimination.

44. Defendants illegally discriminated against Plaintiff, Jane Doe, by refusing to extend insurance coverage to Ms. Doe for facial feminization surgery, hair transplant, and related procedures as part of the Defendants' health insurance plan, which was administered and underwritten by Defendant, Independence Blue Cross.

45. Plaintiff, Jane Doe, may need further facial feminization procedures, hair transplant procedures, and/or related procedures in the future, and seeks equitable/injunctive relief that she is entitled to the benefits of facial feminization surgery, hair transplant, and related procedures on an equal and non-discriminatory basis from Defendants moving forward.

46. Defendants improperly required the showing of a purported physiological "functional impairment" which does not correctly apply the actual language of the policy in Plaintiff, Jane Doe's case, or in the case of transgender individuals suffering from gender dysphoria. *See Doe v. Independence Blue Cross*, No. 23-1530, 2024 WL 233216, at *3 (E.D. Pa. Jan. 22, 2024) ("IBX's gender dysphoria policy does not limit 'functional impairment' to

13

physiological defects. IBX's own definition of gender dysphoria refers to '[c]linically significant distress or impairment in social, occupational, or other important areas of functioning.'"). Pursuant to the language of Defendant, Independence Blue Cross's, policy relating to coverage for the treatment of gender dysphoria, a clear "functional impairment" included impairments in social functioning and occupational functioning, as "gender dysphoria" was clearly defined in Defendant, Independence Blue Cross's, aforementioned policy as, "Clinically significant distress or impairment in social, occupational, or other important areas of functioning." *See* Medical Policy, at Exhibit "C," pages 4-5 ("Clinically significant distress or impairment in social, occupational, or other important areas of functioning").

47. Plaintiff, Jane Doe's, functional impairments consisted of functional impairments in social and occupational functioning, and, therefore, Plaintiff, Jane Doe, should have been covered under the plain terms of the plan. As Plaintiff, Ms. Doe's, impairments in social and occupational functioning were functional in nature, and were clearly and plainly covered under the terms of the plan, benefits were therefore wrongfully denied to Plaintiff, Ms. Doe, on account of her gender identity, her sex/gender, and on account of her gender dysphoria diagnosis.

48. Defendants operated a discriminatory health benefit plan that denied facial feminization surgery, hair transplant, and related procedures to Plaintiff and other transgender women because the procedures were improperly determined to be "cosmetic," when they were not, as they were in reality medically necessary to treat Plaintiff, Jane Doe's, diagnosed gender dysphoria, and to assist in shifting her phenotype from male to female, not to "improve her appearance." To the extent such procedures end up being considered to have "improved the appearance" of the patient, that is secondary to the primary purpose of the procedures,

14

which is to treat the gender dysphoria condition and to assist in shifting the patient's phenotype from male to female.  Facial feminization procedures are medically necessary and not, therefore, cosmetic for individuals who have been diagnosed with gender dysphoria.

49.    Plastic surgery procedures for similarly situated comparators, for example, similar surgeries needed by individuals who have suffered disfigurement from a car accident, hair transplant procedures for patients diagnosed with cancer, similar surgeries needed by intersex individuals, similar procedures for cisgender individuals who need medically necessary procedures to affirm the gender that conforms to their sex identified at birth, procedures needed by individuals with disorder/s of the endocrine system, liposuction and mastectomy procedures associated with gynecomastia surgery for cisgender individuals, and other examples of similar procedures, are not procedures that are considered similarly cosmetic and excluded, but are considered medically necessary covered services.  Facial feminization surgery is, according to Plaintiffs, by its nature, reconstructive surgery.  Facial feminization surgery is, according to Plaintiffs, medically necessary gender affirming care and treatment.  The coverage is being denied to Plaintiff, Jane Doe, by Defendants because she is seeking to shift her phenotype from male to female which constitutes discrimination against her as a transgender person on the basis of sex.  Plaintiff, Jane Doe, is therefore similarly situated but was discriminated against by Defendants as a transgender person on the basis of sex.  The coverage is being denied to Plaintiff, Jane Doe, by Defendants because Plaintiff, Jane Doe, is transgender.  Excluding facial feminization surgery, hair transplant, and related procedures as covered services for transgender individuals constitutes discrimination based on sex, gender stereotyping, gender identity, and disability (gender dysphoria).

50. Defendants subjected Plaintiffs to unequal terms, conditions, benefits, and privileges, including coverage under the health benefit plan, and otherwise made decisions that had an adverse effect on terms, conditions, benefits, and privileges, including coverage under the health benefit plan, as well as identifiable loss or harm cognizable under *Muldrow v. City of St. Louis, Missouri,* 601 U.S. 346 (2024). *See Muldrow v. City of St. Louis, Missouri,* 601 U.S. 346, 347 (2024). Exclusion of facial feminization surgery, hair transplant, and related procedures, as covered services when medically necessary as gender affirming care and treatment from Defendants' health plan results in adverse treatment of members and/or beneficiaries on the basis of sex, gender identity, gender stereotyping, and disability (gender dysphoria) in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), the Americans with Disabilities Act ("ADA"), the Pennsylvania Human Relations Act ("PHRA"), and the Philadelphia Fair Practices Ordinance ("PFPO").

51. Defendants' decision to deny coverage for facial feminization surgery, hair transplant, and related procedures constitutes illegal discrimination on account of sex, gender identity, on account of impermissible gender stereotypes, and/or disability (gender dysphoria).

52. Defendants' discrimination has exacerbated Plaintiff, Jane Doe's, gender dysphoria and caused Plaintiff, Jane Doe, psychological and emotional distress for which she seeks compensatory damages. Plaintiff, Jane Doe, seeks compensatory damages for emotional distress, pain and suffering, humiliation and embarrassment, inconvenience, mental anguish, and loss of enjoyment of life and life's pleasures under Title VII, the ADA, the PHRA, and the PFPO.

53. Plaintiff, John Doe, also seeks compensatory damages for emotional distress, pain and suffering, humiliation and embarrassment, inconvenience, mental anguish, and loss of enjoyment of life and life's pleasures under Title VII, the ADA, the PHRA, and the PFPO.

54. Plaintiffs seek any and all actual damages and/or out-of-pocket expenses needed for future facial feminization surgeries, hair transplant, and related procedures for Plaintiff, Jane Doe.

55. Plaintiffs allege punitive damages are warranted and should be awarded to Plaintiffs under Title VII, the ADA, and/or the PFPO as Defendants engaged in the foregoing discriminatory acts and/or omissions with malice or with reckless indifference to Plaintiffs' protected rights.

56. Plaintiffs hereby request equitable and/or injunctive relief requiring that Defendants provide insurance coverage to cover Plaintiff, Jane Doe, for facial feminization surgery, hair transplant, and related procedures. Plaintiffs seek equitable and/or injunctive relief requiring Defendants to insure Plaintiff as well as other transgender individuals who suffer from gender dysphoria on an equal and non-discriminatory basis moving forward.

## V. CLAIMS FOR RELIEF

**COUNT I:**
**DISCRIMINATION BASED ON SEX IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964 ("TITLE VII"), 42 U.S.C. § 2000e, *et seq.*
(PLAINTIFFS, JANE DOE AND JOHN DOE v. DEFENDANTS, EASTERN ATLANTIC STATES COUNCIL OF CARPENTERS; EASTERN ATLANTIC STATES CARPENTERS HEALTH FUND; EASTERN ATLANTIC STATES COUNCIL OF CARPENTERS, LOCAL 251; WESTERN PENNSYLVANIA REGIONAL DISTRICT COUNCIL; EASTERN ATLANTIC STATES CARPENTERS TECHNICAL CENTERS; UNITED BROTHERHOOD OF CARPENTERS AND JOINERS OF AMERICA; ASSOCIATED CONSTRUCTION CARPENTERS OF NEW JERSEY; GENERAL BUILDING CONTRACTORS ASSOCIATION)**

57. Plaintiffs restate and reallege all previous paragraphs as though fully set forth herein.

58. The acts and omissions described above discriminate on the basis of sex/gender in violation of Title VII of the Civil Rights Act of 1964, codified at 42 U.S.C. § 2000e, *et seq.*

59. Defendants intentionally discriminated against Plaintiffs and subjected Plaintiffs to unequal terms, conditions, benefits, and privileges by denying or excluding insurance

coverage from Defendants' health benefit plan for facial feminization surgeries, hair transplant, and related procedures for Plaintiff, Jane Doe, as covered services when medically necessary as gender affirming care and treatment.

60. Defendants, Eastern Atlantic States Council of Carpenters; Eastern Atlantic States Council of Carpenters, Local 251; Western Pennsylvania Regional District Council; Eastern Atlantic States Carpenters Technical Centers; United States Brotherhood of Carpenters and Joiners of America; Associated Construction Carpenters of New Jersey; and/or General Building Contractors Association, designed and funded the plan and exercised control over the subject benefits.

61. The term, "employer," as it is defined and used in Title VII is sufficiently broad to encompass any party who significantly affects access of any individual to employment opportunities, compensation, terms, conditions, or privileges, of which health insurance benefits are included, and health benefits, in fact, constitute an important and a major part of the employment relationship today.

62. Additionally, the plain language of Title VII of the Civil Rights Act of 1964, specifically 42 U.S.C. § 2000e(d), defines a "labor organization" as "a labor organization engaged in an industry affecting commerce, any any agent of such an organization, and includes any organization of any kind, any agency, or employee representation committee, group, association, or plan so engaged in which employees participate and which exists for the purpose, in whole or in part, of dealing with employers concerning … other terms or conditions of employment, and any conference, general committee, joint system or board, or joint council so engaged which is subordinate to a national or international labor organization." 42 U.S.C. § 2000e(d). Defendants, Eastern Atlantic States Council of Carpenters; Eastern Atlantic States Council of Carpenters, Local 251; Western Pennsylvania

Regional District Council; Eastern Atlantic States Carpenters Technical Centers; United States Brotherhood of Carpenters and Joiners of America; Associated Construction Carpenters of New Jersey; and/or General Building Contractors Association, constitute a "labor organization" within the defined meaning of "labor organization" contained at 42 U.S.C. § 2000e(d).  Health benefits provided by an employer and/or a labor organization to its employees and/or members constitute part of the terms, conditions, or privileges of employment, and, in fact, health benefits are an important and a major part of the employment relationship today.

63.     Defendants, Eastern Atlantic States Council of Carpenters; Eastern Atlantic States Council of Carpenters, Local 251; Western Pennsylvania Regional District Council; Eastern Atlantic States Carpenters Technical Centers; United States Brotherhood of Carpenters and Joiners of America; Associated Construction Carpenters of New Jersey; and/or General Building Contractors Association, adopted a discriminatory health benefit plan that denied facial feminization surgery, hair transplant, and related procedures to transgender women including Plaintiff, Jane Doe, because the procedures were improperly determined to be "cosmetic," when they were not, as they were in reality medically necessary to treat Plaintiff, Jane Doe's, diagnosed gender dysphoria, and to assist in shifting her phenotype from male to female, not to "improve her appearance."  To the extent such procedures end up being considered to have "improved the appearance" of the patient, that is secondary to the primary purpose of the procedures, which is to treat the gender dysphoria condition and to assist in shifting the patient's phenotype from male to female.  Facial feminization procedures are medically necessary and not, therefore, cosmetic for individuals who have been diagnosed with gender dysphoria.

64.     Defendants adopted a discriminatory insurance plan that does not permit coverage of facial

19

feminization procedures based on gender stereotyping, discrimination based on sex, based on gender identity, and based on gender dysphoria.  Defendants discriminated against Plaintiff, Jane Doe, on the basis of Ms. Doe's gender identity, on the basis of Ms. Doe's gender, and based on gender stereotyping, by wrongfully denying health insurance coverage to Ms. Doe for facial feminization surgery, hair transplant, and related procedures, with respect to the health benefit plan offered to Plaintiff, John Doe, and with respect to which Plaintiff, Jane Doe, was rightfully a beneficiary.

65.    Defendants, Eastern Atlantic States Council of Carpenters; Eastern Atlantic States Council of Carpenters, Local 251; Western Pennsylvania Regional District Council; Eastern Atlantic States Carpenters Technical Centers; United States Brotherhood of Carpenters and Joiners of America; Associated Construction Carpenters of New Jersey; and/or General Building Contractors Association's, discriminatory acts described herein resulted in disparate treatment of the aforementioned Defendants' employees, and beneficiaries of Defendants' health benefit plan, based on sex, gender identity, gender stereotyping, and gender dysphoria in violation of Title VII.

66.    On May 16, 2025, Defendant, Independence Blue Cross, provided Plaintiff, Jane Doe, with an Initial Denial Letter denying her request for pre-authorization for facial feminization surgery on the basis that such surgery was cosmetic and not medically necessary which is not accurate, is not in accordance with the WPATH guidelines or the medical consensus on the subject matter, and constitutes discrimination.

67.    Defendants improperly required the showing of a purported physiological "functional impairment" which does not correctly apply the actual language of the policy in Plaintiff, Jane Doe's case, or in the case of transgender individuals suffering from gender dysphoria. *See Doe v. Independence Blue Cross*, No. 23-1530, 2024 WL 233216, at *3 (E.D. Pa. Jan.

20

22, 2024) ("IBX's gender dysphoria policy does not limit 'functional impairment' to physiological defects. IBX's own definition of gender dysphoria refers to '[c]linically significant distress or impairment in social, occupational, or other important areas of functioning.'"). Pursuant to the language of Defendant, Independence Blue Cross's, policy relating to coverage for the treatment of gender dysphoria, a clear "functional impairment" included impairments in social functioning and occupational functioning as "gender dysphoria" was clearly defined in Defendant, Independence Blue Cross's, aforementioned policy as, "Clinically significant distress or impairment in social, occupational, or other important areas of functioning." *See* Medical Policy, at Exhibit "C," pages 4-5 ("Clinically significant distress or impairment in social, occupational, or other important areas of functioning"). Plaintiff, Jane Doe's, functional impairments consisted of functional impairments in social and occupational functioning, and, therefore, Plaintiff, Ms. Doe, should have been covered under the plain terms of the plan. As Plaintiff, Ms. Doe's, impairments in social and occupational functioning were functional in nature, and were clearly and plainly covered under the terms of the plan, benefits were therefore wrongfully denied to Plaintiff, Ms. Doe, on account of her gender identity, her sex/gender, on account of impermissible gender stereotypes, and on account of her gender dysphoria diagnosis.

68. Plastic surgery procedures for similarly situated comparators, for example, similar surgeries needed by individuals who have suffered disfigurement from a car accident, hair transplant procedures for patients diagnosed with cancer, similar surgeries needed by intersex individuals, similar procedures for cisgender individuals who need medically necessary procedures to affirm the gender that conforms to their sex identified at birth, procedures needed by individuals with disorder/s of the endocrine system, liposuction and mastectomy procedures associated with gynecomastia surgery for cisgender individuals,

21

and other examples of similar procedures, are not procedures that are considered similarly cosmetic and excluded, but are considered medically necessary covered services. Facial feminization surgery is, according to Plaintiffs, by its nature, reconstructive surgery. Facial feminization surgery is, according to Plaintiffs, medically necessary gender affirming care and treatment. The coverage is being denied to Plaintiff, Jane Doe, by Defendants because she is seeking to shift her phenotype from male to female which constitutes discrimination against her as a transgender person on the basis of sex. Plaintiff, Jane Doe, is therefore similarly situated but was discriminated against by Defendants as a transgender person on the basis of sex. The coverage is being denied to Plaintiff, Jane Doe, by Defendants because Plaintiff, Jane Doe, is transgender. Excluding facial feminization surgery, hair transplant, and related procedures as covered services for transgender individuals constitutes discrimination based on sex, gender stereotyping, gender identity, and gender dysphoria.

69. Defendants subjected Plaintiffs to unequal terms, conditions, benefits, and privileges, including coverage under the health benefit plan, and otherwise made decisions that had an adverse effect on terms, conditions, benefits, and privileges, including coverage under the health benefit plan, as well as identifiable loss or harm cognizable under *Muldrow v. City of St. Louis, Missouri,* 601 U.S. 346 (2024). *See Muldrow v. City of St. Louis, Missouri,* 601 U.S. 346, 347 (2024). Exclusion of facial feminization surgery, hair transplant, and related procedures as covered services when medically necessary as gender affirming care and treatment from Defendants' health benefit plan intentionally discriminates against Plaintiffs, and against transgender individuals suffering from gender dysphoria, subjects them to unequal terms, conditions, benefits, and privileges by denying them the aforementioned coverage, and results in adverse treatment of members and/or beneficiaries like Plaintiffs on

the basis of sex, gender identity, impermissible gender stereotypes, and gender dysphoria.

70. Plaintiffs suffered loss and harm consistent with *Muldrow*, *supra*, on account of Defendants' discriminatory and unfair denial of insurance coverage as Plaintiff, John Doe's, partner has been denied healthcare benefits to which she is entitled under the plain terms of Plaintiff, John Doe's, health benefit plan despite Plaintiff, John Doe, working and being a faithful employee to the Defendants during the relevant time period, and, further, Plaintiff, Jane Doe, has suffered identifiable loss and harm as she is alleged to not be able to function in society and cannot work without gender affirming care and treatment including facial feminization surgery, hair transplant, and related procedures.

71. Defendants' discriminatory and unfair denial has created a barrier to care that has required Plaintiff, Jane Doe, and other transgender individuals suffering from gender dysphoria to maintain the sex characteristics of their sex assigned at birth, sex characteristics for a sex with which they no longer identify, which constitutes discrimination against Plaintiff, Jane Doe, and other individuals as transgender individuals on the basis of sex in violation of Title VII.

72. Defendant, Eastern Atlantic States Carpenters Health Fund, or the "EASC Health Fund," is alleged to be an agent of the aforementioned labor organization, Eastern Atlantic States Council of Carpenters; Eastern Atlantic States Council of Carpenters, Local 251; Western Pennsylvania Regional District Council; Eastern Atlantic States Carpenters Technical Centers; United States Brotherhood of Carpenters and Joiners of America; Associated Construction Carpenters of New Jersey; and/or General Building Contractors Association, and/or alleged to be a benefit fund liable to Plaintiffs pursuant to *Doe v. Commonwealth of Pennsylvania*, 582 F. Supp. 3d 206 (M.D. Pa. 2022).  It is alleged that Defendant, Eastern Atlantic States Carpenters Health Fund, was created by Defendants, Eastern Atlantic States

Council of Carpenters; Eastern Atlantic States Council of Carpenters, Local 251; Western Pennsylvania Regional District Council; Eastern Atlantic States Carpenters Technical Centers; United States Brotherhood of Carpenters and Joiners of America; Associated Construction Carpenters of New Jersey; and/or General Building Contractors Association, to hold the funds that would pay for the covered services of the health benefit plan. It is alleged that Defendant, Eastern Atlantic States Carpenters Health Fund, funded the relevant health insurance plan at issue. Defendant, Eastern Atlantic States Carpenters Health Fund, discriminated against Plaintiffs, and against transgender individuals suffering from gender dysphoria, by denying them coverage for facial feminization surgery, hair transplant, and related procedures, constituting discrimination on the basis of sex, gender identity, impermissible gender stereotypes, and gender dysphoria.

73.    Plaintiff, Jane Doe, was directly and proximately caused by Defendants, Eastern Atlantic States Council of Carpenters; Eastern Atlantic States Carpenters Health Fund; Eastern Atlantic States Council of Carpenters, Local 251; Western Pennsylvania Regional District Council; Eastern Atlantic States Carpenters Technical Centers; United States Brotherhood of Carpenters and Joiners of America; Associated Construction Carpenters of New Jersey; and/or General Building Contractors Association, to suffer economic harms, emotional distress, mental anguish, pain and suffering, humiliation and embarrassment, loss of enjoyment of life and life's pleasures, and other damages, as described more fully herein, on account of the aforementioned Defendants' discriminatory actions, and for which Plaintiffs, John Doe and Jane Doe, seek economic damages, compensatory damages, punitive damages, and other damages described more fully below, and which are incorporated herein by reference as if the same were set forth more fully at length herein. **WHEREFORE**, Plaintiffs, John Doe and Jane Doe, request judgment in favor of Plaintiffs

24

and against Defendants, Eastern Atlantic States Council of Carpenters; Eastern Atlantic States Carpenters Health Fund; Eastern Atlantic States Council of Carpenters, Local 251; Western Pennsylvania Regional District Council; Eastern Atlantic States Carpenters Technical Centers; United States Brotherhood of Carpenters and Joiners of America; Associated Construction Carpenters of New Jersey; and/or General Building Contractors Association, individually, and/or jointly and severally, in an amount in excess of $150,000.00, which will fully and fairly compensate Plaintiffs for any and all out-of-pocket costs/expenses, actual damages, economic harm, compensatory damages for emotional distress, mental anguish, pain and suffering, humiliation and embarrassment, loss of enjoyment of life and life's pleasures, punitive damages, attorneys' fees, expert witness fees, costs of suit, pre-and post-judgment interest, and equitable/injunctive relief requiring Defendants to cover facial feminization surgery, hair transplant, and related procedures for Plaintiff, Jane Doe, and to provide such coverage on an equal and non-discriminatory basis to transgender individuals who suffer from gender dysphoria, for Defendants to be required to conduct LGBTQ+ sensitivity training and/or training in how to provide competent and respectful medical care and/or coverage to transgender individuals, and any further relief that this Court determines to be just, proper, and equitable.

**COUNT II:**
**DISCRIMINATION BASED ON SEX IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, 42 U.S.C. § 2000e, *et seq.***
**(PLAINTIFFS, JANE DOE AND JOHN DOE v. DEFENDANT, INDEPENDENCE BLUE CROSS)**

74. Plaintiffs restate and reallege all previous paragraphs as though fully set forth herein.

75. On May 16, 2025, Defendant, Independence Blue Cross, provided Plaintiff, Jane Doe, with an Initial Denial Letter denying her request for pre-authorization for facial feminization surgery on the basis that such surgery was cosmetic and not medically necessary which is not accurate, is not in accordance with the WPATH guidelines or the medical consensus on the subject matter, and constitutes discrimination.

76. Plaintiff, Jane Doe, subsequently appealed the discriminatory denial of coverage contained in the Defendant, Independence Blue Cross's, Initial Denial Letter to Plaintiff. Defendant, Independence Blue Cross, nevertheless upheld the decision to wrongfully deny Plaintiff, Jane Doe, coverage on appeal.

77. Plaintiff, Jane Doe, submitted a request for a further external review of the decision which was controlled by Defendant, Independence Blue Cross. It was not truly independent. The external review was still denied. Plaintiff, Jane Doe's, request was denied, she contends, on account of discrimination against her based on sex, gender identity, impermissible gender stereotypes, and based on her gender dysphoria diagnosis.

78. Before being forced to institute this litigation, Plaintiff even filed a civil rights complaint internally with Defendant, Independence Blue Cross, as was indicated could be done in the policy. However, Plaintiff, Jane Doe's, efforts were futile. Defendant, Independence Blue Cross, found there to be no discrimination, and no civil rights violation, with respect to the denial, and wrongfully upheld the denial of the claim. However, Defendant, Independence Blue Cross's, actions clearly constitute discrimination.

79. Under the plain language of Title VII of the Civil Rights Act of 1964, specifically at 42 U.S.C. § 2000e(b), the term "employer" is expressly defined as "a person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year, ***and any agent of such a person*** … ." 42 U.S.C. § 2000e(b) (emphasis added). Additionally, the plain language of Title VII, specifically at 42 U.S.C. § 2000e(d), defines a "labor organization" as "a labor organization engaged in an industry affecting commerce, ***any any agent of such an organization, and includes any organization of any kind, any agency, or employee representation committee, group, association, or plan so engaged in which employees***

*__participate and which exists for the purpose, in whole or in part, of dealing with employers__*

*__concerning … other terms or conditions of employment … .__*" 42 U.S.C. § 2000e(d)

(emphasis added). It is alleged that Defendant, Independence Blue Cross, acted, at all times

relevant hereto, as an agent of the employer and/or the labor organization, Defendants, Eastern

Atlantic States Council of Carpenters; Eastern Atlantic States Council of Carpenters, Local

251; Western Pennsylvania Regional District Council; Eastern Atlantic States Carpenters

Technical Centers; United States Brotherhood of Carpenters and Joiners of America;

Associated Construction Carpenters of New Jersey; and/or General Building Contractors

Association. Health benefits provided by an employer and/or a labor organization to its

employees and/or members constitute part of the terms, conditions, or privileges of

employment, and, in fact, health benefits are an important and a major part of the employment

relationship today.

80. Further, in *City of Los Angeles, Department of Water & Power v. Manhart*, 435 U.S. 702

(1978), the Supreme Court of the United States held that, under Title VII, an employer cannot

"avoid his responsibilities by delegating discriminatory programs to corporate shells."

*Manhart*, 435 U.S. at 717 n.33.

81. Courts attempting to correctly apply the above ruling from *Manhart* resulted in a Circuit split.

*See Spirt v. Teachers Ins. Annuity Ass'n*, 691 F.2d 1054, 1063 (2d Cir. 1982), judgment

vacated *sub nom, Long Island Univ. v. Spirt*, 463 U.S. 1233 (1983). *See also Peters v. Wayne

State Univ.*, 691 F.2d 235, 238 (6th Cir. 1982), vacated, 463 U.S. 1233 (1983). Following

the Circuit split created by *Spirt* and *Peters*, the Supreme Court of the United States granted

*certiorari* in a case that subsequently held that Title VII "prohibits an employer from offering

its employees" a discriminatory retirement plan in *Arizona Governing Committee for Tax

Deferred Annuity & Deferred Compensation Plans v. Norris*, 463 U.S. 1073 (1983) (*per*

*curiam*). *See Ariz. Governing Comm. for Tax Deferred Annuity & Deferred Comp. Plans v. Norris*, 463 U.S. 1073, 1074 (1983) (*per curiam*). Similarly, applying the above ruling, an employer cannot offer its employees a health benefit plan that blatantly discriminates on the basis of sex. *See also Bostock v. Clayton County, Georgia*, 590 U.S. 644 (2020) (discrimination on the basis of transgender status is discrimination on the basis of sex).

82. Defendant, Independence Blue Cross, illegally discriminated against Plaintiff, Jane Doe, by refusing to extend insurance coverage to Plaintiff, Jane Doe, for facial feminization surgery, hair transplant, and related procedures as part of the health insurance plan administered and underwritten by Defendant, Independence Blue Cross.

83. Defendant, Independence Blue Cross's, discriminatory and unfair denial has created a barrier to care that has required Plaintiff, Jane Doe, and other transgender individuals suffering from gender dysphoria to maintain the sex characteristics of their sex assigned at birth, sex characteristics for a sex with which they no longer identify, which constitutes discrimination against Plaintiff, Jane Doe, and other individuals as transgender individuals on the basis of sex in violation of Title VII.

84. Defendant, Independence Blue Cross, improperly required the showing of a purported physiological "functional impairment" which does not correctly apply the actual language of the policy in Plaintiff, Jane Doe's case, or in the case of transgender individuals suffering from gender dysphoria. *See Doe v. Independence Blue Cross*, No. 23-1530, 2024 WL 233216, at *3 (E.D. Pa. Jan. 22, 2024) ("IBX's gender dysphoria policy does not limit 'functional impairment' to physiological defects. IBX's own definition of gender dysphoria refers to '[c]linically significant distress or impairment in social, occupational, or other important areas of functioning.'"). Pursuant to the language of Defendant, Independence Blue Cross's, policy relating to coverage for the treatment of gender

dysphoria, a clear "functional impairment" included impairments in social functioning and occupational functioning, as "gender dysphoria" was clearly defined in Defendant, Independence Blue Cross's, aforementioned policy as, "Clinically significant distress or impairment in social, occupational, or other important areas of functioning." *See* Medical Policy, at Exhibit "C," pages 4-5 ("Clinically significant distress or impairment in social, occupational, or other important areas of functioning"). Plaintiff, Jane Doe's, functional impairments consisted of functional impairments in social and occupational functioning and, therefore, Plaintiff, Jane Doe, should have been covered under the plain terms of the plan. As Plaintiff, Ms. Doe's, impairments in social and occupational functioning were functional in nature, and were clearly and plainly covered under the terms of the plan, benefits were therefore wrongfully denied to Plaintiff, Ms. Doe, on account of her gender identity, her sex/gender, on account of impermissible gender stereotypes, and on account of her gender dysphoria diagnosis.

85. Plastic surgery procedures for similarly situated comparators, for example, similar surgeries needed by individuals who have suffered disfigurement from a car accident, hair transplant procedures for patients diagnosed with cancer, similar surgeries needed by intersex individuals, similar procedures for cisgender individuals who need medically necessary procedures to affirm the gender that conforms to their sex identified at birth, procedures needed by individuals with disorder/s of the endocrine system, liposuction and mastectomy procedures associated with gynecomastia surgery for cisgender individuals, and other examples of similar procedures, are not procedures that are considered similarly cosmetic and excluded, but are considered medically necessary covered services. Facial feminization surgery is, according to Plaintiffs, by its nature, reconstructive surgery. Facial feminization surgery is, according to Plaintiffs, medically necessary gender affirming care

29

and treatment. The coverage is being denied to Plaintiff, Jane Doe, by Defendant, Independence Blue Cross, because she is seeking to shift her phenotype from male to female which constitutes discrimination against her as a transgender person on the basis of sex. Plaintiff, Jane Doe, is therefore similarly situated but was discriminated against by Defendant, Independence Blue Cross, as a transgender person on the basis of sex. The coverage is being denied to Plaintiff, Jane Doe, by Defendant, Independence Blue Cross, because Plaintiff, Jane Doe, is transgender. Excluding facial feminization surgery, hair transplant, and related procedures as covered services for transgender individuals constitutes discrimination based on sex, gender stereotyping, gender identity, and gender dysphoria.

86. The acts and omissions described above discriminate on the basis of sex/gender in violation of Title VII of the Civil Rights Act of 1964, codified at 42 U.S.C. § 2000e, *et seq.*

**WHEREFORE**, Plaintiffs, John Doe and Jane Doe, request judgment in favor of Plaintiffs and against Defendant, Independence Blue Cross, individually, and/or jointly and severally, in an amount in excess of $150,000.00, which will fully and fairly compensate Plaintiffs for any and all out-of-pocket costs/expenses, actual damages, economic harm, compensatory damages for emotional distress, mental anguish, pain and suffering, humiliation and embarrassment, loss of enjoyment of life and life's pleasures, punitive damages, attorneys' fees, expert witness fees, costs of suit, pre-and post-judgment interest, and equitable/injunctive relief requiring Defendant, Independence Blue Cross, to cover facial feminization surgery, hair transplant, and related procedures for Plaintiff, Jane Doe, and to provide such coverage on an equal and non-discriminatory basis to transgender individuals who suffer from gender dysphoria, for Defendant, Independence Blue Cross, to be required to conduct LGBTQ+ sensitivity training and/or training in how to provide competent and respectful medical care and/or coverage to transgender individuals, and any further relief that this Court determines to be just,

proper, and equitable.

**COUNT III:**
**DISCRIMINATION BASED ON GENDER IDENTITY IN VIOLATION OF THE**
**PHILADELPHIA FAIR PRACTICES ORDINANCE ("PFPO"), CHAPTER 9-1100,**
**SECTION 9-1101,** *et seq.***, OF THE PHILADELPHIA CODE**
**(PLAINTIFFS, JANE DOE AND JOHN DOE v. DEFENDANTS, EASTERN ATLANTIC**
**STATES COUNCIL OF CARPENTERS; EASTERN ATLANTIC STATES**
**CARPENTERS HEALTH FUND; EASTERN ATLANTIC STATES COUNCIL OF**
**CARPENTERS, LOCAL 251; WESTERN PENNSYLVANIA REGIONAL DISTRICT**
**COUNCIL; EASTERN ATLANTIC STATES CARPENTERS TECHNICAL CENTERS;**
**UNITED BROTHERHOOD OF CARPENTERS AND JOINERS OF AMERICA;**
**ASSOCIATED CONSTRUCTION CARPENTERS OF NEW JERSEY; AND GENERAL**
<u>**BUILDING CONTRACTORS ASSOCIATION)**</u>

87.     Plaintiffs restate and reallege all previous paragraphs as though fully set forth herein.

88.     Defendants, Eastern Atlantic States Council of Carpenters; Eastern Atlantic States Carpenters Health Fund; Eastern Atlantic States Council of Carpenters, Local 251; Western Pennsylvania Regional District Council; Eastern Atlantic States Carpenters Technical Centers; United States Brotherhood of Carpenters and Joiners of America; Associated Construction Carpenters of New Jersey; and/or General Building Contractors Association, discriminated against Plaintiffs in violation of the Philadelphia Fair Practices Ordinance ("PFPO"), at Section 9-1101, *et seq.*, of the Philadelphia Code.

89.     Defendants, Eastern Atlantic States Council of Carpenters; Eastern Atlantic States Council of Carpenters, Local 251; Western Pennsylvania Regional District Council; Eastern Atlantic States Carpenters Technical Centers; United States Brotherhood of Carpenters and Joiners of America; Associated Construction Carpenters of New Jersey; and/or General Building Contractors Association, constitute an "employer" within the meaning of the PFPO, at § 9-1102(h).

90.     The aforementioned Defendants, alternatively, constitute a "labor organization" within the meaning of the PFPO, at § 9-1102(n), which defines a "labor organization" as, "Any

31

organization which exists for the purpose, in whole or in part, of collective bargaining or of dealing with employers concerning grievances, terms, or conditions of employment or of other mutual aid or protection in relation to employment." § 9-1102(n).

91. The PFPO also makes it an "unlawful employment practice" "[f]or any person to aid, abet, incite, induce, compel or coerce the doing of any unlawful employment practice … or to attempt directly or indirectly to commit any act declared by this Section to be an unlawful employment practice." § 9-1103(1)(h). Further, the PFPO defines an "[e]mployer" as "[a]ny person who does business in the City of Philadelphia through employees or who employs one or more employees … ." § 9-1102(1)(h). The aforementioned Defendants, including Defendant, Eastern Atlantic States Carpenters Health Fund, each constitute a "person" within the meaning of the PFPO.

92. The aforementioned Defendants engaged in "discrimination," as defined by the terms of the PFPO, which prohibits, in pertinent part, "discrimination" that is defined to include "[a]ny direct or indirect practice of exclusion … distinction, restriction … limitation, refusal, denial, differentiation or preference in the treatment of a person on the basis of actual or perceived … sex" or "gender identity." § 9-1102(e). Denial of health insurance benefits within a health plan offered by an employer on the basis of gender identity fits within this definition. In fact, health insurance benefits are an important and a major part of the employment relationship today.

93. The PFPO explicitly protects Plaintiff, Jane Doe, from discrimination on the basis of her "gender identity," and defines "gender identity" as "[a]n individual's internal sense of gender, or one's gender as perceived by others, that may or may not align with one's physical anatomy, chromosomal sex, or sex assigned at birth. Examples include, but are not limited to, man, woman, non-binary, genderfluid, and agender." § 9-1102(k).

94. The PFPO, in pertinent part, makes it an "unlawful employment practice" "[f]or any employer to … otherwise discriminate against any individual, with respect to … terms, conditions or privileges of employment or with respect to any matter directly or indirectly related to employment." § 9-1103(1)(a). Denial of health insurance benefits on the basis of gender identity within a health plan offered by an employer fits within this definition.

95. The PFPO also makes it an "unlawful employment practice" "[f]or any labor organization to discriminate against any individual or to limit, segregate or classify its membership in any way which would deprive such individual of employment opportunities, limit his or her employment opportunities or otherwise adversely affect his or her status as an employee or as an applicant for employment or adversely affect his or her … conditions of employment." § 9-1103(1)(c).

96. The aforementioned Defendants discriminated against Plaintiff, Jane Doe, on the basis of Plaintiff, Jane Doe's, gender identity by wrongfully denying health insurance coverage to Plaintiff, Jane Doe, for facial feminization surgery, hair transplant, and related procedures.

97. On May 16, 2025, Defendant, Independence Blue Cross, provided Plaintiff, Jane Doe, with an Initial Denial Letter denying her request for pre-authorization for facial feminization surgery on the basis that such surgery was cosmetic and not medically necessary which is not accurate, is not in accordance with the WPATH guidelines or the medical consensus on the subject matter, and constitutes discrimination.

98. Defendants improperly required the showing of a purported physiological "functional impairment" which does not correctly apply the actual language of the policy in Plaintiff, Jane Doe's case, or in the case of transgender individuals suffering from gender dysphoria. *See Doe v. Independence Blue Cross*, No. 23-1530, 2024 WL 233216, at *3 (E.D. Pa. Jan. 22, 2024) ("IBX's gender dysphoria policy does not limit 'functional impairment' to

physiological defects.  IBX's own definition of gender dysphoria refers to '[c]linically significant distress or impairment in social, occupational, or other important areas of functioning.'").  Pursuant to the language of Defendant, Independence Blue Cross's, policy relating to coverage for the treatment of gender dysphoria, a clear "functional impairment" included impairments in social functioning and occupational functioning as "gender dysphoria" was clearly defined in Defendant, Independence Blue Cross's, aforementioned policy as, "Clinically significant distress or impairment in social, occupational, or other important areas of functioning." *See* Medical Policy, at Exhibit "C," pages 4-5 ("Clinically significant distress or impairment in social, occupational, or other important areas of functioning").  Plaintiff, Jane Doe's, functional impairments consisted of functional impairments in social and occupational functioning, and, therefore, Plaintiff, Ms. Doe, should have been covered under the plain terms of the plan.  As Plaintiff, Ms. Doe's, impairments in social and occupational functioning were functional in nature, and were clearly and plainly covered under the terms of the plan, benefits were therefore wrongfully denied to Plaintiff, Ms. Doe, on account of her gender identity.

99. Plastic surgery procedures for similarly situated comparators, for example, similar surgeries needed by individuals who have suffered disfigurement from a car accident, hair transplant procedures for patients diagnosed with cancer, similar surgeries needed by intersex individuals, similar procedures for cisgender individuals who need medically necessary procedures to affirm the gender that conforms to their sex identified at birth, procedures needed by individuals with disorder/s of the endocrine system, liposuction and mastectomy procedures associated with gynecomastia surgery for cisgender individuals, and other examples of similar procedures, are not procedures that are considered similarly cosmetic and excluded, but are considered medically necessary covered services.  Facial

feminization surgery is, according to Plaintiffs, by its nature, reconstructive surgery. Facial feminization surgery is, according to Plaintiffs, medically necessary gender affirming care and treatment. The coverage is being denied to Plaintiff, Jane Doe, by Defendants because she is seeking to shift her phenotype from male to female which constitutes discrimination against her based on her gender identity. Plaintiff, Jane Doe, is therefore similarly situated but was discriminated against by Defendants based on her gender identity. The coverage is being denied to Plaintiff, Jane Doe, by Defendants because Plaintiff, Jane Doe, is transgender. Excluding facial feminization surgery, hair transplant, and related procedures as covered services for transgender individuals constitutes discrimination based gender identity in violation of the PFPO.

100. Defendants, Eastern Atlantic States Council of Carpenters; Eastern Atlantic States Council of Carpenters, Local 251; Western Pennsylvania Regional District Council; Eastern Atlantic States Carpenters Technical Centers; United States Brotherhood of Carpenters and Joiners of America; Associated Construction Carpenters of New Jersey; and/or General Building Contractors Association, adopted a discriminatory insurance plan that does not permit coverage of facial feminization procedures based on gender identity. The aforementioned Defendants discriminated against Plaintiff, Jane Doe, on the basis of Ms. Doe's gender identity by wrongfully denying health insurance coverage to Ms. Doe for facial feminization surgery, hair transplant, and related procedures, with respect to the health benefit plan offered to Plaintiff, John Doe, and with respect to which Plaintiff, Jane Doe, was rightfully a beneficiary.

101. Defendants, Eastern Atlantic States Council of Carpenters; Eastern Atlantic States Council of Carpenters, Local 251; Western Pennsylvania Regional District Council; Eastern Atlantic States Carpenters Technical Centers; United States Brotherhood of Carpenters and

Joiners of America; Associated Construction Carpenters of New Jersey; and/or General Building Contractors Association's, discriminatory acts described herein resulted in disparate treatment of the aforementioned Defendants' employees, members, and beneficiaries of Defendants' health benefit plan based on gender identity in violation of the PFPO.

**WHEREFORE**, Plaintiffs, John Doe and Jane Doe, request judgment in favor of Plaintiffs and against Defendants, Eastern Atlantic States Council of Carpenters; Eastern Atlantic States Carpenters Health Fund; Eastern Atlantic States Council of Carpenters, Local 251; Western Pennsylvania Regional District Council; Eastern Atlantic States Carpenters Technical Centers; United States Brotherhood of Carpenters and Joiners of America; Associated Construction Carpenters of New Jersey; and/or General Building Contractors Association, individually, and/or jointly and severally, in an amount in excess of $150,000.00, which will fully and fairly compensate Plaintiffs for any and all out-of-pocket costs/expenses, actual damages, economic harm, compensatory damages for emotional distress, mental anguish, pain and suffering, humiliation and embarrassment, loss of enjoyment of life and life's pleasures, punitive damages, attorneys' fees, expert witness fees, costs of suit, pre-and post-judgment interest, and equitable/injunctive relief requiring Defendants to cover facial feminization surgery, hair transplant, and related procedures for Plaintiff, Jane Doe, and to provide such coverage on an equal and non-discriminatory basis to transgender individuals who suffer from gender dysphoria, for Defendants to be required to conduct LGBTQ+ sensitivity training and/or training in how to provide competent and respectful medical care and/or coverage to transgender individuals, and any further relief that this Court determines to be just, proper, and equitable.

**COUNT IV:**
**DISCRIMINATION BASED ON GENDER IDENTITY IN VIOLATION OF THE PHILADELPHIA FAIR PRACTICES ORDINANCE ("PFPO"), CHAPTER 9-1100, SECTION 9-1101, *et seq.*, OF THE PHILADELPHIA CODE**
**(PLAINTIFFS, JANE DOE AND JOHN DOE v. DEFENDANT, INDEPENDENCE BLUE**

36

**CROSS)**

102. Plaintiffs restate and reallege all previous paragraphs as though fully set forth herein.

103. Defendant, Independence Blue Cross, discriminated against Plaintiffs in violation of the PFPO, at Section 9-1101, *et seq.*, of the Philadelphia Code.

104. The PFPO makes it an "unlawful employment practice" "[f]or any person to aid, abet, incite, induce, compel or coerce the doing of any unlawful employment practice … or to attempt directly or indirectly to commit any act declared by this Section to be an unlawful employment practice." § 9-1103(1)(h).

105. The PFPO further defines an "[e]mployer" as "[a]ny person who does business in the City of Philadelphia through employees or who employs one or more employees … ." § 9-1102(1)(h).

106. On May 16, 2025, Defendant, Independence Blue Cross, provided Plaintiff, Jane Doe, with an Initial Denial Letter denying her request for pre-authorization for facial feminization surgery on the basis that such surgery was cosmetic and not medically necessary which is not accurate, is not in accordance with the WPATH guidelines or the medical consensus on the subject matter, and constitutes discrimination.

107. Plaintiff, Jane Doe, subsequently appealed the discriminatory denial of coverage contained in the Defendant, Independence Blue Cross's, Initial Denial Letter to Plaintiff. Defendant, Independence Blue Cross, nevertheless upheld the decision to wrongfully deny Plaintiff, Jane Doe, coverage on appeal.

108. Plaintiff, Jane Doe, submitted a request for a further external review of the decision which was controlled by Defendant, Independence Blue Cross. It was not truly independent. The external review was still denied. Plaintiff, Jane Doe's, request was denied, she contends, on account of discrimination against her based on sex, gender identity, impermissible gender

stereotypes, and based on her gender dysphoria diagnosis.

109. Before being forced to institute this litigation, Plaintiff even filed a civil rights complaint internally with Defendant, Independence Blue Cross, as was indicated could be done in the policy. However, Plaintiff, Jane Doe's, efforts were futile. Defendant, Independence Blue Cross, found there to be no discrimination, and no civil rights violation, with respect to the denial, and wrongfully upheld the denial of the claim. However, Defendant, Independence Blue Cross's, actions clearly constitute discrimination.

110. Defendant, Independence Blue Cross, illegally discriminated against Plaintiff, Jane Doe, by refusing to extend insurance coverage to Plaintiff, Jane Doe, for facial feminization surgery, hair transplant, and related procedures as part of the health insurance plan administered and underwritten by Defendant, Independence Blue Cross, which was offered to Plaintiff, John Doe, and of which Plaintiff, Jane Doe, who is the partner of Plaintiff, John Doe, was rightfully a beneficiary.

111. Defendant, Independence Blue Cross, improperly required the showing of a purported physiological "functional impairment" which does not correctly apply the actual language of the policy in Plaintiff, Jane Doe's case, or in the case of transgender individuals suffering from gender dysphoria. *See Doe v. Independence Blue Cross*, No. 23-1530, 2024 WL 233216, at *3 (E.D. Pa. Jan. 22, 2024) ("IBX's gender dysphoria policy does not limit 'functional impairment' to physiological defects. IBX's own definition of gender dysphoria refers to '[c]linically significant distress or impairment in social, occupational, or other important areas of functioning.'"). Pursuant to the language of Defendant, Independence Blue Cross's, policy relating to coverage for the treatment of gender dysphoria, a clear "functional impairment" included impairments in social functioning and occupational functioning, as "gender dysphoria" was clearly defined in Defendant,

Independence Blue Cross's, aforementioned policy as, "Clinically significant distress or impairment in social, occupational, or other important areas of functioning." *See* Medical Policy, at Exhibit "C," pages 4-5 ("Clinically significant distress or impairment in social, occupational, or other important areas of functioning"). Plaintiff, Jane Doe's, functional impairments consisted of functional impairments in social and occupational functioning and, therefore, Plaintiff, Jane Doe, should have been covered under the plain terms of the plan. As Plaintiff, Ms. Doe's, impairments in social and occupational functioning were functional in nature, and were clearly and plainly covered under the terms of the plan, benefits were therefore wrongfully denied to Plaintiff, Ms. Doe, on account of her gender identity.

112. Plastic surgery procedures for similarly situated comparators, for example, similar surgeries needed by individuals who have suffered disfigurement from a car accident, hair transplant procedures for patients diagnosed with cancer, similar surgeries needed by intersex individuals, similar procedures for cisgender individuals who need medically necessary procedures to affirm the gender that conforms to their sex identified at birth, procedures needed by individuals with disorder/s of the endocrine system, liposuction and mastectomy procedures associated with gynecomastia surgery for cisgender individuals, and other examples of similar procedures, are not procedures that are considered similarly cosmetic and excluded, but are considered medically necessary covered services. Facial feminization surgery is, according to Plaintiffs, by its nature, reconstructive surgery. Facial feminization surgery is, according to Plaintiffs, medically necessary gender affirming care and treatment. The coverage is being denied to Plaintiff, Jane Doe, by Defendants because she is seeking to shift her phenotype from male to female which constitutes discrimination against her as a transgender person on the basis of sex. Plaintiff, Jane Doe, is therefore

39

similarly situated but was discriminated against by the aforementioned Defendants as a transgender person on the basis of sex. The coverage is being denied to Plaintiff, Jane Doe, by the aforementioned Defendants because Plaintiff, Jane Doe, is transgender. Excluding facial feminization surgery, hair transplant, and related procedures as covered services for transgender individuals constitutes discrimination based on sex, gender stereotyping, gender identity, and gender dysphoria.

**WHEREFORE**, Plaintiffs, John Doe and Jane Doe, request judgment in favor of Plaintiffs and against Defendant, Independence Blue Cross, individually, and/or jointly and severally, in an amount in excess of $150,000.00, which will fully and fairly compensate Plaintiffs for any and all out-of-pocket costs/expenses, actual damages, economic harm, compensatory damages for emotional distress, mental anguish, pain and suffering, humiliation and embarrassment, loss of enjoyment of life and life's pleasures, punitive damages, attorneys' fees, expert witness fees, costs of suit, pre-and post-judgment interest, and equitable/injunctive relief requiring Defendant, Independence Blue Cross, to cover facial feminization surgery, hair transplant, and related procedures for Plaintiff, Jane Doe, and to provide such coverage on an equal and non-discriminatory basis to transgender individuals who suffer from gender dysphoria, for Defendant, Independence Blue Cross, to be required to conduct LGBTQ+ sensitivity training and/or training in how to provide competent and respectful medical care and/or coverage to transgender individuals, and any further relief that this Court determines to be just, proper, and equitable.

**COUNT V:**
**DISCRIMINATION BASED ON SEX IN VIOLATION OF SECTION 1557 OF THE**
**AFFORDABLE CARE ACT, 42 U.S.C. § 18116**
**(PLAINTIFFS, JANE DOE AND JOHN DOE v. DEFENDANT, EASTERN ATLANTIC**
**STATES CARPENTERS HEALTH FUND)**

113.    Plaintiffs restate and reallege all previous paragraphs as though fully set forth at length herein.

114. Congress prohibited sex discrimination in any "health program or activity, any part of which is receiving Federal financial assistance, including credits, subsidies, or contracts of insurance … ."  42 U.S.C. § 18116(a).  42 U.S.C. § 18116 is known as Section 1557, the Patient Protection and Affordable Care Act, or the Affordable Care Act ("ACA").

115. The term, "health program or activity," includes all of the operations of entities principally engaged in the business of providing healthcare, any part of which receive Federal financial assistance, which includes the operations of Defendant, Eastern Atlantic States Carpenters Health Fund, which is in the business of providing healthcare, and which is alleged, upon information and belief, to receive Federal financial assistance.  The operations of Defendant, Eastern Atlantic States Carpenters Health Fund, support covered insurance products including the health benefit plan offered to Plaintiff, John Doe, of which Plaintiff, Jane Doe, was rightfully a beneficiary.

116. The text of 42 U.S.C. § 18116(a) provides as follows:

§ 18116. Nondiscrimination.

(a)    In general.

> Except as otherwise provided for in this title (or an amendment made by this title), an individual shall not, on the ground prohibited under title VI of the Civil Rights Act of 1964 (42 U.S.C. § 2000d, *et seq.*), title IX of the Education Amendments of 1972 (20 U.S.C. § 1681, *et seq.*), the Age Discrimination Act of 1975 (42 U.S.C. § 6101, *et seq.*), or section 794 of title 29, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under, any health program or activity, any part of which is receiving Federal financial assistance, including credits, subsidies, or contracts of insurance, or under any program or activity that is administered by an Executive Agency or any entity established under this title (or amendments).

42 U.S.C. § 18116(a).

117. Section 1557 of the Affordable Care Act, along with its implementing regulations, at 45

C.F.R. § 92, *et seq.*, 81 FR 31375-473 (May 18, 2016), have adopted the ACA non-discrimination rule, which prohibits discrimination based on sex, and which includes discrimination based on gender identity, by referring to and incorporating therein the prohibitions of Title IX, 20 U.S.C. § 1681, against sex discrimination including its enforcement provisions.

118.   According to 45 C.F.R. § 92.1, "Section 1557 requires the application of the enforcement mechanisms under Title VI of the Civil Rights Act of 1964 (42 U.S.C. § 2000d, *et seq.*), Title IX of the Education Amendments of 1972 (20 U.S.C. § 1681, *et seq.*), the Age Discrimination Act of 1975 (42 U.S.C. § 6101, *et seq.*), and Section 504 of the Rehabilitation Act of 1973 (29 U.S.C. § 794) for purposes of violations of Section 1557 and this part." 45 C.F.R. § 92.1 (Subpart A – General Provisions).

119.   45 C.F.R. § 92.2 further provides in pertinent part:

> Except as provided in Title I of the Patient Protection and Affordable Care Act (or any amendment thereto), an individual shall not, on any of the grounds set forth in paragraph (b) of this section, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any health program or activity, any part of which is receiving Federal financial assistance (including credits, subsidies, or contracts of insurance) provided by the U.S. Department of Health and Human Services; or under any program or activity administered by the Department under such Title; or under any program or activity administered by any entity established under such Title.

45 C.F.R. § 92.2.

120.   Defendant, Eastern Atlantic States Carpenters Health Fund, upon information and belief, was required to certify compliance with the prohibitions against sex discrimination contained in 42 U.S.C. § 18116 in order to participate in the Commonwealth of Pennsylvania's State Health Insurance Exchange, under 45 C.F.R. § 92.4, which provides as follows:

Assurances.

> (a) Assurances. An entity applying for Federal financial assistance to which this part applies shall, as a condition of any application for Federal financial assistance, submit an assurance, on a form specified by the Director of the Department's Office for Civil Rights, that the entity's health programs or activities will be operated in compliance with section 1557 and this part. A health insurance issuer seeking certification to participate in an Exchange or a State seeking approval to operate a State Exchange to which section 1557 or this part applies shall, as a condition of certification or approval, submit an assurance, on a form specified by the Director of the Department's Office for Civil Rights, that the health program or activity will be operated in compliance with section 1557 and this part. An applicant or entity may incorporate this assurance by reference in subsequent applications to the Department for Federal financial assistance or requests for certification to participate in an Exchange or approval to operate a State Exchange.

45 C.F.R. § 92.4.

121. Discrimination on the basis of gender identity constitutes discrimination on the basis of "sex" under Section 1557.

122. The Department of Health and Human Services' ("HHS") regulations including the ACA non-discrimination rule apply to "covered entities" and prohibit discrimination on the basis of gender identity. 45 C.F.R. §§ 92.4, 92.207.

123. Defendant, Eastern Atlantic States Carpenters Health Fund, constitutes a "covered entity" under 45 C.F.R. § 92.4.3.

124. Plaintiff, Jane Doe, sought pre-authorization for facial feminization surgery with respect to insurance coverage under a health benefit plan offered by Defendant, Eastern Atlantic States Carpenters Health Fund. It is alleged that Defendant, Eastern Atlantic States Carpenters Health Fund, was created by Defendants, Eastern Atlantic States Council of Carpenters; Eastern Atlantic States Council of Carpenters, Local 251; Western Pennsylvania Regional District Council; Eastern Atlantic States Carpenters Technical Centers; United States Brotherhood of Carpenters and Joiners of America; Associated

Construction Carpenters of New Jersey; and/or General Building Contractors Association, to hold the funds that would pay for the covered services of the health benefit plan offered to their members.  It is alleged that Defendant, Eastern Atlantic States Carpenters Health Fund, funded the relevant health insurance plan at issue.

125. On May 16, 2025, Defendant, Independence Blue Cross, provided Plaintiff, Jane Doe, with an Initial Denial Letter denying her request for pre-authorization for facial feminization surgery on the basis that such surgery was cosmetic and not medically necessary which is not accurate, is not in accordance with the WPATH guidelines or the medical consensus on the subject matter, and constitutes discrimination.

126. Defendant improperly required the showing of a purported physiological "functional impairment" which does not correctly apply the actual language of the policy in Plaintiff, Jane Doe's case, or in the case of transgender individuals suffering from gender dysphoria. *See Doe v. Independence Blue Cross*, No. 23-1530, 2024 WL 233216, at *3 (E.D. Pa. Jan. 22, 2024) ("IBX's gender dysphoria policy does not limit 'functional impairment' to physiological defects.  IBX's own definition of gender dysphoria refers to '[c]linically significant distress or impairment in social, occupational, or other important areas of functioning.'").  Pursuant to the language of Defendant, Independence Blue Cross's, policy relating to coverage for the treatment of gender dysphoria, a clear "functional impairment" included impairments in social functioning and occupational functioning as "gender dysphoria" was clearly defined in Defendant, Independence Blue Cross's, aforementioned policy as, "Clinically significant distress or impairment in social, occupational, or other important areas of functioning."  *See* Medical Policy, at Exhibit "C," pages 4-5 ("Clinically significant distress or impairment in social, occupational, or other important areas of functioning").  Plaintiff, Jane Doe's, functional impairments consisted of functional

impairments in social and occupational functioning, and, therefore, Plaintiff, Ms. Doe, should have been covered under the plain terms of the plan. As Plaintiff, Ms. Doe's, impairments in social and occupational functioning were functional in nature, and were clearly and plainly covered under the terms of the plan, benefits were therefore wrongfully denied to Plaintiff, Ms. Doe, on account of her gender identity, her sex/gender, on account of impermissible gender stereotypes, and on account of her gender dysphoria diagnosis.

127. Plastic surgery procedures for similarly situated comparators, for example, similar surgeries needed by individuals who have suffered disfigurement from a car accident, hair transplant procedures for patients diagnosed with cancer, similar surgeries needed by intersex individuals, similar procedures for cisgender individuals who need medically necessary procedures to affirm the gender that conforms to their sex identified at birth, procedures needed by individuals with disorder/s of the endocrine system, liposuction and mastectomy procedures associated with gynecomastia surgery for cisgender individuals, and other examples of similar procedures, are not procedures that are considered similarly cosmetic and excluded, but are considered medically necessary covered services. Facial feminization surgery is, according to Plaintiffs, by its nature, reconstructive surgery. Facial feminization surgery is, according to Plaintiffs, medically necessary gender affirming care and treatment. The coverage is being denied to Plaintiff, Jane Doe, by Defendant because she is seeking to shift her phenotype from male to female which constitutes discrimination against her as a transgender person on the basis of sex. Plaintiff, Jane Doe, is therefore similarly situated but was discriminated against by Defendant as a transgender person on the basis of sex. The coverage is being denied to Plaintiff, Jane Doe, by Defendant because Plaintiff, Jane Doe, is transgender. Excluding facial feminization surgery, hair transplant, and related procedures as covered services for transgender individuals constitutes

discrimination based on sex, gender stereotyping, gender identity, and gender dysphoria.

128. Plaintiffs have been wrongfully subjected to discrimination by Defendant, Eastern Atlantic States Carpenters Health Fund, on the basis of sex in violation of Section 1557 of the Affordable Care Act, 42 U.S.C. § 18116.

**WHEREFORE**, Plaintiffs, John Doe and Jane Doe, request judgment in favor of Plaintiffs and against Defendant, Eastern Atlantic States Carpenters Health Fund, individually, and/or jointly and severally, in an amount in excess of $150,000.00, which will fully and fairly compensate Plaintiffs for any and all out-of-pocket costs/expenses, actual damages, economic harm, attorneys' fees, expert witness fees, costs of suit, pre-and post-judgment interest, and equitable/injunctive relief requiring Defendant, Eastern Atlantic States Carpenters Health Fund, to cover facial feminization surgery, hair transplant, and related procedures for Plaintiff, Jane Doe, and to provide such coverage on an equal and non-discriminatory basis to transgender individuals who suffer from gender dysphoria, for Defendant, Eastern Atlantic States Carpenters Health Fund, to be required to conduct LGBTQ+ sensitivity training and/or training in how to provide competent and respectful medical care and/or coverage to transgender individuals, and any further relief that this Court determines to be just, proper, and equitable.

**COUNT VI:**
**DISCRIMINATION BASED ON SEX IN VIOLATION OF SECTION 1557 OF THE AFFORDABLE CARE ACT, 42 U.S.C. § 18116**
**(PLAINTIFFS, JANE DOE AND JOHN DOE v. DEFENDANT, INDEPENDENCE BLUE CROSS)**

129. Plaintiffs restate and reallege all previous paragraphs as though fully set forth at length herein.

130. Congress prohibited sex discrimination in any "health program or activity" including policies of insurance issued on behalf of health insurance companies, and which includes the Defendant, Independence Blue Cross, codified at 42 U.S.C. § 18116.  42 U.S.C. §

46

18116(a).

131.    Defendant, Independence Blue Cross, is a health insurance issuer, and is therefore a covered entity within the meaning of Section 1557 of the ACA.  It is further believed and therefore averred that Defendant, Independence Blue Cross, received Federal financial assistance, including, it is believed, for its health programs or activities, and therefore Defendant, Independence Blue Cross, constitutes a covered entity under Section 1557 of the ACA.

132.    Section 1557 of the Affordable Care Act, along with its implementing regulations, at 45 C.F.R. § 92, *et seq.*, 81 FR 31375-473 (May 18, 2016), have adopted the ACA non-discrimination rule, which prohibits discrimination based on sex, and which includes discrimination based on gender identity, by referring to and incorporating therein the prohibitions of Title IX, 20 U.S.C. § 1681, against sex discrimination including its enforcement provisions.

133.    45 C.F.R. § 92.2 further provides in pertinent part:

> Except as provided in Title I of the Patient Protection and Affordable Care Act (or any amendment thereto), an individual shall not, on any of the grounds set forth in paragraph (b) of this section, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any health program or activity, any part of which is receiving Federal financial assistance (including credits, subsidies, or contracts of insurance) provided by the U.S. Department of Health and Human Services; or under any program or activity administered by the Department under such Title; or under any program or activity administered by any entity established under such Title.

45 C.F.R. § 92.2.

134.    It is believed and therefore averred that Defendant, Independence Blue Cross, was required to certify compliance with the prohibitions against sex discrimination contained in 42 U.S.C. § 18116 in order to participate in the Commonwealth of Pennsylvania's State Health Insurance Exchange, under 45 C.F.R. § 92.4, which provides as follows:

Assurances.

(a) Assurances. An entity applying for Federal financial assistance to which this part applies shall, as a condition of any application for Federal financial assistance, submit an assurance, on a form specified by the Director of the Department's Office for Civil Rights, that the entity's health programs or activities will be operated in compliance with section 1557 and this part. A health insurance issuer seeking certification to participate in an Exchange or a State seeking approval to operate a State Exchange to which section 1557 or this part applies shall, as a condition of certification or approval, submit an assurance, on a form specified by the Director of the Department's Office for Civil Rights, that the health program or activity will be operated in compliance with section 1557 and this part. An applicant or entity may incorporate this assurance by reference in subsequent applications to the Department for Federal financial assistance or requests for certification to participate in an Exchange or approval to operate a State Exchange.

45 C.F.R. § 92.4.

135.    Defendant, Independence Blue Cross, constitutes an issuer of insurance products, plans, and/or benefits which are believed and therefore averred to receive Federal financial assistance.

136.    The Department of Health and Human Services' ("HHS") regulations including the ACA non-discrimination rule apply to "covered entities" and prohibit discrimination on the basis of gender identity. 45 C.F.R. §§ 92.4, 92.207. Defendant, Independence Blue Cross, further constitutes a "covered entity" under 45 C.F.R. § 92.4.3.

137.    Discrimination on the basis of gender identity constitutes discrimination on the basis of "sex" under Section 1557.

138.    On May 16, 2025, Defendant, Independence Blue Cross, provided Plaintiff, Jane Doe, with an Initial Denial Letter denying her request for pre-authorization for facial feminization surgery on the basis that such surgery was cosmetic and not medically necessary which is not accurate, is not in accordance with the WPATH guidelines or the medical consensus on the subject matter, and constitutes discrimination.

139.    Plaintiff, Jane Doe, subsequently appealed the discriminatory denial of coverage contained

48

in the Defendant, Independence Blue Cross's, Initial Denial Letter to Plaintiff. Defendant, Independence Blue Cross, nevertheless upheld the decision to wrongfully deny Plaintiff, Jane Doe, coverage on appeal.

140. Plaintiff, Jane Doe, submitted a request for a further external review of the decision which was controlled by Defendant, Independence Blue Cross. It was not truly independent. The external review was still denied. Plaintiff, Jane Doe's, request was denied, she contends, on account of discrimination against her based on sex, gender identity, impermissible gender stereotypes, and gender dysphoria.

141. Before being forced to institute this litigation, Plaintiff, Jane Doe, even filed a civil rights complaint internally with Defendant, Independence Blue Cross, as was indicated could be done in the policy. However, Plaintiff, Jane Doe's, efforts were futile. Defendant, Independence Blue Cross, found there to be no discrimination, and no civil rights violation, with respect to the denial, and wrongfully upheld the denial of the claim. However, Defendant, Independence Blue Cross's, actions clearly constitute discrimination.

142. Defendant improperly required the showing of a purported physiological "functional impairment" which does not correctly apply the actual language of the policy in Plaintiff, Jane Doe's case, or in the case of transgender individuals suffering from gender dysphoria. *See Doe v. Independence Blue Cross*, No. 23-1530, 2024 WL 233216, at *3 (E.D. Pa. Jan. 22, 2024) ("IBX's gender dysphoria policy does not limit 'functional impairment' to physiological defects. IBX's own definition of gender dysphoria refers to '[c]linically significant distress or impairment in social, occupational, or other important areas of functioning.'"). Pursuant to the language of Defendant, Independence Blue Cross's, policy relating to coverage for the treatment of gender dysphoria, a clear "functional impairment" included impairments in social functioning and occupational functioning as "gender

dysphoria" was clearly defined in Defendant, Independence Blue Cross's, aforementioned policy as, "Clinically significant distress or impairment in social, occupational, or other important areas of functioning." *See* Medical Policy, at Exhibit "C," pages 4-5 ("Clinically significant distress or impairment in social, occupational, or other important areas of functioning").  Plaintiff, Jane Doe's, functional impairments consisted of functional impairments in social and occupational functioning, and, therefore, Plaintiff, Ms. Doe, should have been covered under the plain terms of the plan.  As Plaintiff, Ms. Doe's, impairments in social and occupational functioning were functional in nature, and were clearly and plainly covered under the terms of the plan, benefits were therefore wrongfully denied to Plaintiff, Ms. Doe, on account of her gender identity, her sex/gender, on account of impermissible gender stereotypes, and on account of her gender dysphoria diagnosis.

143. Plastic surgery procedures for similarly situated comparators, for example, similar surgeries needed by individuals who have suffered disfigurement from a car accident, hair transplant procedures for patients diagnosed with cancer, similar surgeries needed by intersex individuals, similar procedures for cisgender individuals who need medically necessary procedures to affirm the gender that conforms to their sex identified at birth, procedures needed by individuals with disorder/s of the endocrine system, liposuction and mastectomy procedures associated with gynecomastia surgery for cisgender individuals, and other examples of similar procedures, are not procedures that are considered similarly cosmetic and excluded, but are considered medically necessary covered services.  Facial feminization surgery is, according to Plaintiffs, by its nature, reconstructive surgery.  Facial feminization surgery is, according to Plaintiffs, medically necessary gender affirming care and treatment.  The coverage is being denied to Plaintiff, Jane Doe, by Defendant because she is seeking to shift her phenotype from male to female which constitutes discrimination

against her as a transgender person on the basis of sex. Plaintiff, Jane Doe, is therefore similarly situated but was discriminated against by Defendant as a transgender person on the basis of sex. The coverage is being denied to Plaintiff, Jane Doe, by Defendant because Plaintiff, Jane Doe, is transgender. Excluding facial feminization surgery, hair transplant, and related procedures as covered services for transgender individuals constitutes discrimination based on sex, gender stereotyping, gender identity, and gender dysphoria.

144. Plaintiffs have been wrongfully subjected to discrimination by Defendant, Independence Blue Cross, on the basis of sex in violation of Section 1557 of the Affordable Care Act, 42 U.S.C. § 18116.

**WHEREFORE**, Plaintiffs, John Doe and Jane Doe, request judgment in favor of Plaintiffs and against Defendant, Independence Blue Cross, individually, and/or jointly and severally, in an amount in excess of $150,000.00, which will fully and fairly compensate Plaintiffs for any and all out-of-pocket costs/expenses, actual damages, economic harm, attorneys' fees, expert witness fees, costs of suit, pre-and post-judgment interest, and equitable/injunctive relief requiring Defendant, Independence Blue Cross, to cover facial feminization surgery, hair transplant, and related procedures for Plaintiff, Jane Doe, and to provide such coverage on an equal and non-discriminatory basis to transgender individuals who suffer from gender dysphoria, for Defendant, Independence Blue Cross, to be required to conduct LGBTQ+ sensitivity training and/or training in how to provide competent and respectful medical care and/or coverage to transgender individuals, and any further relief that this Court determines to be just, proper, and equitable.

**COUNT VII:**
**DISCRIMINATION BASED ON DISABILITY IN VIOLATION OF SECTION 1557 OF THE AFFORDABLE CARE ACT, 42 U.S.C. § 18116**
**(PLAINTIFFS, JANE DOE AND JOHN DOE v. DEFENDANT, EASTERN ATLANTIC STATES CARPENTERS HEALTH FUND)**

145. Plaintiffs restate and reallege all previous paragraphs as though fully set forth at length

51

herein.

146.    Plaintiff, Jane Doe, suffers from a disability, gender dysphoria, or "GD," which is a covered disability within the meaning of Section 1557 of the ACA.

147.    Congress prohibited discrimination based on actual or perceived disability in any "health program or activity, any part of which is receiving Federal financial assistance, including credits, subsidies, or contracts of insurance … ." 42 U.S.C. § 18116(a).

148.    The term, "health program or activity," includes all of the operations of entities principally engaged in the business of providing healthcare, any part of which receive Federal financial assistance, which includes the operations of Defendant, Eastern Atlantic States Carpenters Health Fund, which is in the business of providing healthcare, and which is alleged, upon information and belief, to receive Federal financial assistance. The operations of Defendant, Eastern Atlantic States Carpenters Health Fund, support covered insurance products including the health benefit plan offered to Plaintiff, John Doe, of which Plaintiff, Jane Doe, was rightfully a beneficiary.

149.    The text of 42 U.S.C. § 18116(a) provides as follows:

§ 18116. Nondiscrimination.

(a)    In general.

Except as otherwise provided for in this title (or an amendment made by this title), an individual shall not, on the ground prohibited under title VI of the Civil Rights Act of 1964 (42 U.S.C. § 2000d, *et seq.*), title IX of the Education Amendments of 1972 (20 U.S.C. § 1681, *et seq.*), the Age Discrimination Act of 1975 (42 U.S.C. § 6101, *et seq.*), or ***section 794 of title 29 [Section 504 of the Rehabilitation Act of 1973]***, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under, any health program or activity, any part of which is receiving Federal financial assistance, including credits, subsidies, or contracts of insurance, or under any program or activity that is administered by an Executive Agency or any entity established under this title (or amendments).

52

42 U.S.C. § 18116(a) (emphasis added).

150. According to 45 C.F.R. § 92.1, "Section 1557 requires the application of the enforcement mechanisms under Title VI of the Civil Rights Act of 1964 (42 U.S.C. § 2000d, *et seq.*), Title IX of the Education Amendments of 1972 (20 U.S.C. § 1681, *et seq.*), the Age Discrimination Act of 1975 (42 U.S.C. § 6101, *et seq.*), and Section 504 of the Rehabilitation Act of 1973 (29 U.S.C. § 794) for purposes of violations of Section 1557 and this part." 45 C.F.R. § 92.1 (Subpart A – General Provisions).

151. 45 C.F.R. § 92.2 further provides in pertinent part:

> Except as provided in Title I of the Patient Protection and Affordable Care Act (or any amendment thereto), an individual shall not, on any of the grounds set forth in paragraph (b) of this section, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any health program or activity, any part of which is receiving Federal financial assistance (including credits, subsidies, or contracts of insurance) provided by the U.S. Department of Health and Human Services; or under any program or activity administered by the Department under such Title; or under any program or activity administered by any entity established under such Title.

45 C.F.R. § 92.2.

152. Defendant, Eastern Atlantic States Carpenters Health Fund, upon information and belief, was required to certify compliance with the prohibitions against discrimination based on actual or perceived disability contained in 42 U.S.C. § 18116 in order to participate in the Commonwealth of Pennsylvania's State Health Insurance Exchange, under 45 C.F.R. § 92.4, which provides as follows:

> <u>Assurances.</u>

> (a) Assurances. An entity applying for Federal financial assistance to which this part applies shall, as a condition of any application for Federal financial assistance, submit an assurance, on a form specified by the Director of the Department's Office for Civil Rights, that the entity's health programs or activities will be operated in compliance with section 1557 and this part. A health insurance issuer seeking certification to participate in an Exchange or a State seeking approval to operate a State Exchange to which section

> 1557 or this part applies shall, as a condition of certification or approval, submit an assurance, on a form specified by the Director of the Department's Office for Civil Rights, that the health program or activity will be operated in compliance with section 1557 and this part. An applicant or entity may incorporate this assurance by reference in subsequent applications to the Department for Federal financial assistance or requests for certification to participate in an Exchange or approval to operate a State Exchange.

45 C.F.R. § 92.4.

153. The Department of Health and Human Services' ("HHS") regulations including the ACA non-discrimination rule apply to "covered entities" and prohibit discrimination on the basis of actual or perceived disability. 45 C.F.R. §§ 92.4, 92.207.

154. Defendant, Eastern Atlantic States Carpenters Health Fund, constitutes a "covered entity" under 45 C.F.R. § 92.4.3.

155. Plaintiff, Jane Doe, sought pre-authorization for facial feminization surgery with respect to insurance coverage under a health benefit plan offered by Defendant, Eastern Atlantic States Carpenters Health Fund. It is alleged that Defendant, Eastern Atlantic States Carpenters Health Fund, was created by Defendants, Eastern Atlantic States Council of Carpenters; Eastern Atlantic States Council of Carpenters, Local 251; Western Pennsylvania Regional District Council; Eastern Atlantic States Carpenters Technical Centers; United States Brotherhood of Carpenters and Joiners of America; Associated Construction Carpenters of New Jersey; and/or General Building Contractors Association, to hold the funds that would pay for the covered services of the health benefit plan offered to their members. It is alleged that Defendant, Eastern Atlantic States Carpenters Health Fund, funded the relevant health insurance plan at issue.

156. On May 16, 2025, Defendant, Independence Blue Cross, provided Plaintiff, Jane Doe, with an Initial Denial Letter denying her request for pre-authorization for facial feminization

surgery on the basis that such surgery was cosmetic and not medically necessary which is not accurate, is not in accordance with the WPATH guidelines or the medical consensus on the subject matter, and constitutes discrimination.

157. Defendant improperly required the showing of a purported physiological "functional impairment" which does not correctly apply the actual language of the policy in Plaintiff, Jane Doe's case, or in the case of transgender individuals suffering from gender dysphoria. *See Doe v. Independence Blue Cross*, No. 23-1530, 2024 WL 233216, at *3 (E.D. Pa. Jan. 22, 2024) ("IBX's gender dysphoria policy does not limit 'functional impairment' to physiological defects. IBX's own definition of gender dysphoria refers to '[c]linically significant distress or impairment in social, occupational, or other important areas of functioning.'"). Pursuant to the language of Defendant, Independence Blue Cross's, policy relating to coverage for the treatment of gender dysphoria, a clear "functional impairment" included impairments in social functioning and occupational functioning as "gender dysphoria" was clearly defined in Defendant, Independence Blue Cross's, aforementioned policy as, "Clinically significant distress or impairment in social, occupational, or other important areas of functioning." *See* Medical Policy, at Exhibit "C," pages 4-5 ("Clinically significant distress or impairment in social, occupational, or other important areas of functioning"). Plaintiff, Jane Doe's, functional impairments consisted of functional impairments in social and occupational functioning, and, therefore, Plaintiff, Ms. Doe, should have been covered under the plain terms of the plan. As Plaintiff, Ms. Doe's, impairments in social and occupational functioning were functional in nature, and were clearly and plainly covered under the terms of the plan, benefits were therefore wrongfully denied to Plaintiff, Ms. Doe, on account of her gender dysphoria diagnosis.

158. Defendant, Eastern Atlantic States Carpenters Health Fund, denied medically necessary

gender affirming care and treatment for Plaintiff, Jane Doe's, gender dysphoria disability. Defendant, Eastern Atlantic States Carpenters Health Fund, in practice, singled out Plaintiff, Jane Doe, and other people who are transgender who suffer from gender dysphoria for unequal treatment by creating a barrier for them to access medical services to treat their gender dysphoria disability.

159. Defendant, Eastern Atlantic States Carpenters Health Fund, in practice, drew a line between procedures sought as a form of gender affirming care and treatment, and other procedures, and specifically excluded the aforementioned gender affirming procedures for Plaintiff, Jane Doe, and other transgender people with a gender dysphoria diagnosis. Defendant, Eastern Atlantic States Carpenters Health Fund, applied the exclusion for cosmetic procedures in a way that discriminates against diagnoses of gender dysphoria and discriminated against Plaintiff, Jane Doe, solely on the basis of that diagnosis.

160. Plaintiffs have been wrongfully subjected to discrimination by Defendant, Eastern Atlantic States Carpenters Health Fund, on the basis of actual or perceived disability in violation of Section 1557 of the Affordable Care Act, 42 U.S.C. § 18116.

**WHEREFORE**, Plaintiffs, John Doe and Jane Doe, request judgment in favor of Plaintiffs and against Defendant, Eastern Atlantic States Carpenters Health Fund, individually, and/or jointly and severally, in an amount in excess of $150,000.00, which will fully and fairly compensate Plaintiffs for any and all out-of-pocket costs/expenses, actual damages, economic harm, attorneys' fees, expert witness fees, costs of suit, pre-and post-judgment interest, and equitable/injunctive relief requiring Defendant, Eastern Atlantic States Carpenters Health Fund, to cover facial feminization surgery, hair transplant, and related procedures for Plaintiff, Jane Doe, and to provide such coverage on an equal and non-discriminatory basis to transgender individuals who suffer from gender dysphoria, for Defendant, Eastern Atlantic States Carpenters Health Fund, to be required to conduct LGBTQ+

sensitivity training and/or training in how to provide competent and respectful medical care and/or coverage to transgender individuals, and any further relief that this Court determines to be just, proper, and equitable.

**COUNT VIII:**
**DISCRIMINATION BASED ON DISABILITY IN VIOLATION OF SECTION 1557 OF THE AFFORDABLE CARE ACT, 42 U.S.C. § 18116**
**(PLAINTIFFS, JANE DOE AND JOHN DOE v. DEFENDANT, INDEPENDENCE BLUE CROSS)**

161.   Plaintiffs restate and reallege all previous paragraphs as though fully set forth at length herein.

162.   Congress prohibited discrimination based on actual or perceived disability in any "health program or activity" including policies of insurance issued on behalf of health insurance companies, and which includes the Defendant, Independence Blue Cross, codified at 42 U.S.C. § 18116.  42 U.S.C. § 18116(a).

163.   Defendant, Independence Blue Cross, is a health insurance issuer, and is therefore a covered entity within the meaning of Section 1557 of the ACA.  It is further believed and therefore averred that Defendant, Independence Blue Cross, received Federal financial assistance, including, it is believed, for its health programs or activities, and therefore Defendant, Independence Blue Cross, constitutes a covered entity under Section 1557 of the ACA.

164.   45 C.F.R. § 92.2 further provides in pertinent part:

> Except as provided in Title I of the Patient Protection and Affordable Care Act (or any amendment thereto), an individual shall not, on any of the grounds set forth in paragraph (b) of this section, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any health program or activity, any part of which is receiving Federal financial assistance (including credits, subsidies, or contracts of insurance) provided by the U.S. Department of Health and Human Services; or under any program or activity administered by the Department under such Title; or under any program or activity administered by any entity established under such Title.

45 C.F.R. § 92.2.

165. It is believed and therefore averred that Defendant, Independence Blue Cross, was required to certify compliance with the prohibitions against discrimination based on actual or perceived disability contained in 42 U.S.C. § 18116 in order to participate in the Commonwealth of Pennsylvania's State Health Insurance Exchange, under 45 C.F.R. § 92.4, which provides as follows:

Assurances.

(a) Assurances. An entity applying for Federal financial assistance to which this part applies shall, as a condition of any application for Federal financial assistance, submit an assurance, on a form specified by the Director of the Department's Office for Civil Rights, that the entity's health programs or activities will be operated in compliance with section 1557 and this part. A health insurance issuer seeking certification to participate in an Exchange or a State seeking approval to operate a State Exchange to which section 1557 or this part applies shall, as a condition of certification or approval, submit an assurance, on a form specified by the Director of the Department's Office for Civil Rights, that the health program or activity will be operated in compliance with section 1557 and this part. An applicant or entity may incorporate this assurance by reference in subsequent applications to the Department for Federal financial assistance or requests for certification to participate in an Exchange or approval to operate a State Exchange.

45 C.F.R. § 92.4.

166. Defendant, Independence Blue Cross, constitutes an issuer of insurance products, plans, and/or benefits which are believed and therefore averred to receive Federal financial assistance.

167. The Department of Health and Human Services' ("HHS") regulations including the ACA non-discrimination rule apply to "covered entities" and prohibit discrimination on the basis of actual or perceived disability. 45 C.F.R. §§ 92.4, 92.207. Defendant, Independence Blue Cross, further constitutes a "covered entity" under 45 C.F.R. § 92.4.3.

168. On May 16, 2025, Defendant, Independence Blue Cross, provided Plaintiff, Jane Doe, with an Initial Denial Letter denying her request for pre-authorization for facial feminization

surgery on the basis that such surgery was cosmetic and not medically necessary which is not accurate, is not in accordance with the WPATH guidelines or the medical consensus on the subject matter, and constitutes discrimination.

169. Plaintiff, Jane Doe, subsequently appealed the discriminatory denial of coverage contained in the Defendant, Independence Blue Cross's, Initial Denial Letter to Plaintiff. Defendant, Independence Blue Cross, nevertheless upheld the decision to wrongfully deny Plaintiff, Jane Doe, coverage on appeal.

170. Plaintiff, Jane Doe, submitted a request for a further external review of the decision which was controlled by Defendant, Independence Blue Cross. It was not truly independent. The external review was still denied. Plaintiff, Jane Doe's, request was denied, she contends, on account of discrimination against her based on her disability, gender dysphoria.

171. Before being forced to institute this litigation, Plaintiff, Jane Doe, even filed a civil rights complaint internally with Defendant, Independence Blue Cross, as was indicated could be done in the policy. However, Plaintiff, Jane Doe's, efforts were futile. Defendant, Independence Blue Cross, found there to be no discrimination, and no civil rights violation, with respect to the denial, and wrongfully upheld the denial of the claim. However, Defendant, Independence Blue Cross's, actions clearly constitute discrimination.

172. Defendant improperly required the showing of a purported physiological "functional impairment" which does not correctly apply the actual language of the policy in Plaintiff, Jane Doe's case, or in the case of transgender individuals suffering from gender dysphoria. *See Doe v. Independence Blue Cross*, No. 23-1530, 2024 WL 233216, at *3 (E.D. Pa. Jan. 22, 2024) ("IBX's gender dysphoria policy does not limit 'functional impairment' to physiological defects. IBX's own definition of gender dysphoria refers to '[c]linically significant distress or impairment in social, occupational, or other important areas of

functioning.'"). Pursuant to the language of Defendant, Independence Blue Cross's, policy relating to coverage for the treatment of gender dysphoria, a clear "functional impairment" included impairments in social functioning and occupational functioning as "gender dysphoria" was clearly defined in Defendant, Independence Blue Cross's, aforementioned policy as, "Clinically significant distress or impairment in social, occupational, or other important areas of functioning." *See* Medical Policy, at Exhibit "C," pages 4-5 ("Clinically significant distress or impairment in social, occupational, or other important areas of functioning"). Plaintiff, Jane Doe's, functional impairments consisted of functional impairments in social and occupational functioning, and, therefore, Plaintiff, Ms. Doe, should have been covered under the plain terms of the plan. As Plaintiff, Ms. Doe's, impairments in social and occupational functioning were functional in nature, and were clearly and plainly covered under the terms of the plan, benefits were therefore wrongfully denied to Plaintiff, Ms. Doe, on account of her gender dysphoria diagnosis.

173. Defendant, Independence Blue Cross, denied medically necessary gender affirming care and treatment for Plaintiff, Jane Doe's, gender dysphoria disability. Defendant, Independence Blue Cross, in practice, singled out Plaintiff, Jane Doe, and other people who are transgender who suffer from gender dysphoria for unequal treatment by creating a barrier for them to access medical services to treat their gender dysphoria disability.

174. Defendant, Independence Blue Cross, in practice, drew a line between procedures sought as a form of gender affirming care and treatment, and other procedures, and specifically excluded the aforementioned gender affirming procedures for Plaintiff, Jane Doe, and other transgender people with a gender dysphoria diagnosis. Defendant, Independence Blue Cross, applied its exclusion for cosmetic procedures in a way that discriminates against diagnoses of gender dysphoria and discriminated against Plaintiff, Jane Doe, solely on the basis of that

60

diagnosis.

175.    Plaintiffs have been wrongfully subjected to discrimination by Defendant, Independence Blue Cross, on the basis of actual or perceived disability in violation of Section 1557 of the Affordable Care Act, 42 U.S.C. § 18116.

**WHEREFORE**, Plaintiffs, John Doe and Jane Doe, request judgment in favor of Plaintiffs and against Defendant, Independence Blue Cross, individually, and/or jointly and severally, in an amount in excess of $150,000.00, which will fully and fairly compensate Plaintiffs for any and all out-of-pocket costs/expenses, actual damages, economic harm, attorneys' fees, expert witness fees, costs of suit, pre-and post-judgment interest, and equitable/injunctive relief requiring Defendant, Independence Blue Cross, to cover facial feminization surgery, hair transplant, and related procedures for Plaintiff, Jane Doe, and to provide such coverage on an equal and non-discriminatory basis to transgender individuals who suffer from gender dysphoria, for Defendant, Independence Blue Cross, to be required to conduct LGBTQ+ sensitivity training and/or training in how to provide competent and respectful medical care and/or coverage to transgender individuals, and any further relief that this Court determines to be just, proper, and equitable.

**COUNT IX:**
**DISCRIMINATION IN VIOLATION OF THE AMERICANS WITH DISABILITIES**
**ACT ("ADA"), AS AMENDED, 42 U.S.C. § 12101, *et seq.***
**(PLAINTIFFS, JANE DOE AND JOHN DOE v. DEFENDANTS, EASTERN ATLANTIC**
**STATES COUNCIL OF CARPENTERS; EASTERN ATLANTIC STATES**
**CARPENTERS HEALTH FUND; EASTERN ATLANTIC STATES COUNCIL OF**
**CARPENTERS, LOCAL 251; WESTERN PENNSYLVANIA REGIONAL DISTRICT**
**COUNCIL; EASTERN ATLANTIC STATES CARPENTERS TECHNICAL CENTERS;**
**UNITED BROTHERHOOD OF CARPENTERS AND JOINERS OF AMERICA;**
**ASSOCIATED CONSTRUCTION CARPENTERS OF NEW JERSEY; AND GENERAL**
**BUILDING CONTRACTORS ASSOCIATION)**

176.    Plaintiffs restate and reallege all previous paragraphs as though fully set forth here.

177.    Defendants, Eastern Atlantic States Council of Carpenters; Eastern Atlantic States

61

Carpenters Health Fund; Eastern Atlantic States Council of Carpenters, Local 251; Western Pennsylvania Regional District Council; Eastern Atlantic States Carpenters Technical Centers; United States Brotherhood of Carpenters and Joiners of America; Associated Construction Carpenters of New Jersey; and/or General Building Contractors Association, discriminated against Plaintiff, Jane Doe, based on her disability, gender dysphoria, in violation of Title I of the ADA, 42 U.S.C. § 12111, *et seq.*, which prohibits discrimination including, Plaintiffs contend, the unequal and discriminatory provision of health insurance benefits based on actual or perceived disability that are offered by an employer or a labor organization. Further, Plaintiff, John Doe, was discriminated against by the aforementioned Defendants based on his association with an individual with a disability, his partner, Plaintiff, Jane Doe.

178. 42 U.S.C. § 12111(2) defines a "covered entity" under Title I of the ADA as "an employer, employment agency, labor organization, or joint labor-management committee." 42 U.S.C. § 12111(2). Defendants, Eastern Atlantic States Council of Carpenters; Eastern Atlantic States Carpenters Health Fund; Eastern Atlantic States Council of Carpenters, Local 251; Western Pennsylvania Regional District Council; Eastern Atlantic States Carpenters Technical Centers; United States Brotherhood of Carpenters and Joiners of America; Associated Construction Carpenters of New Jersey; and/or General Building Contractors Association, each constitute a "covered entity" within the meaning of Title I of the ADA, at 42 U.S.C. § 12111(2), as each of the aforementioned Defendants constitute a "labor organization" and/or "an employer." 42 U.S.C. § 12111(2).

179. 42 U.S.C. § 121112(a) prohibits discrimination by any "covered entity" with respect to "other terms, conditions, and privileges of employment." 42 U.S.C. § 121112(a). Defendants, Eastern Atlantic States Council of Carpenters; Eastern Atlantic States

62

Carpenters Health Fund; Eastern Atlantic States Council of Carpenters, Local 251; Western Pennsylvania Regional District Council; Eastern Atlantic States Carpenters Technical Centers; United States Brotherhood of Carpenters and Joiners of America; Associated Construction Carpenters of New Jersey; and/or General Building Contractors Association, discriminated against Plaintiffs in the "other terms, conditions, and privileges" of employment in Plaintiff, John Doe's, capacity as a member of the aforementioned Defendants' labor organization, with respect to the health insurance benefits offered to Plaintiff, John Doe, and of which his partner, Plaintiff, Jane Doe, was rightfully a beneficiary under the plan.

180. Under the plain language of 42 U.S.C. § 12111(5)(A), the term "employer" is expressly defined as "a person engaged in an industry affecting commerce who has 15 or more employees for each working day in each of 20 or more calendar weeks in the current or preceding calendar year, ***and any agent of such a person*** … ." 42 U.S.C. § 12111(5)(A) (emphasis added). The aforementioned Defendants, including Defendant, Eastern Atlantic States Carpenters Health Fund, are alleged to be an "agent" of an employer or of a labor organization within the meaning of 42 U.S.C. § 12111(5)(A). In fact, health insurance benefits constitute an important and a major part of the employment relationship today.

181. Plaintiff, Jane Doe, is a qualified individual with a disability under the ADA, and Plaintiff, John Doe, is associated with an individual with a disability under the ADA, his partner, Plaintiff, Jane Doe. Plaintiff, Jane Doe, suffers from a disability, gender dysphoria, within the meaning of the ADA. Plaintiff, Jane Doe's, gender dysphoria constitutes a disability under the ADA because gender dysphoria is a physical or a mental impairment that substantially limits one or more major life activities. 42 U.S.C. § 12102(1).

182. Plaintiff, Jane Doe, was clinically diagnosed with gender dysphoria and has clinically

significant distress associated with being transgender. The substantial limitation on Plaintiff, Jane Doe's, major life activities include limitations in social and occupational functioning.

183. Defendants, Eastern Atlantic States Council of Carpenters; Eastern Atlantic States Carpenters Health Fund; Eastern Atlantic States Council of Carpenters, Local 251; Western Pennsylvania Regional District Council; Eastern Atlantic States Carpenters Technical Centers; United States Brotherhood of Carpenters and Joiners of America; Associated Construction Carpenters of New Jersey; and/or General Building Contractors Association, denied medically necessary gender affirming care and treatment for Plaintiff, Jane Doe's, gender dysphoria disability. The aforementioned Defendants, in practice, singled out Plaintiff, Jane Doe, and other people who are transgender who suffer from gender dysphoria for unequal treatment by creating a barrier for them to access medical services to treat their gender dysphoria disability.

184. Defendants, Eastern Atlantic States Council of Carpenters; Eastern Atlantic States Carpenters Health Fund; Eastern Atlantic States Council of Carpenters, Local 251; Western Pennsylvania Regional District Council; Eastern Atlantic States Carpenters Technical Centers; United States Brotherhood of Carpenters and Joiners of America; Associated Construction Carpenters of New Jersey; and/or General Building Contractors Association, in practice, drew a line between procedures sought as a form of gender affirming care and treatment, and other procedures, and specifically excluded the aforementioned gender affirming procedures for Plaintiff, Jane Doe, and other transgender people with a gender dysphoria diagnosis. The aforementioned Defendants applied the exclusion for cosmetic procedures in a way that discriminates against diagnoses of gender dysphoria and discriminated against Plaintiff, Jane Doe, solely on the basis of that diagnosis.

64

185.   Plaintiffs seek redress for Defendants, Eastern Atlantic States Council of Carpenters; Eastern Atlantic States Carpenters Health Fund; Eastern Atlantic States Council of Carpenters, Local 251; Western Pennsylvania Regional District Council; Eastern Atlantic States Carpenters Technical Centers; United States Brotherhood of Carpenters and Joiners of America; Associated Construction Carpenters of New Jersey; and/or General Building Contractors Association's, violation of Plaintiffs' rights under 42 U.S.C. §12133.

**WHEREFORE**, Plaintiffs, John Doe and Jane Doe, request judgment in favor of Plaintiffs and against Defendants, Eastern Atlantic States Council of Carpenters; Eastern Atlantic States Carpenters Health Fund; Eastern Atlantic States Council of Carpenters, Local 251; Western Pennsylvania Regional District Council; Eastern Atlantic States Carpenters Technical Centers; United States Brotherhood of Carpenters and Joiners of America; Associated Construction Carpenters of New Jersey; and/or General Building Contractors Association, individually, and/or jointly and severally, in an amount in excess of $150,000.00, which will fully and fairly compensate Plaintiffs for any and all out-of-pocket costs/expenses, actual damages, economic harm, compensatory damages for emotional distress, mental anguish, pain and suffering, humiliation and embarrassment, loss of enjoyment of life and life's pleasures, punitive damages, attorneys' fees, expert witness fees, costs of suit, pre-and post-judgment interest, and equitable/injunctive relief requiring Defendants to cover facial feminization surgery, hair transplant, and related procedures for Plaintiff, Jane Doe, and to provide such coverage on an equal and non-discriminatory basis to transgender individuals who suffer from gender dysphoria, for Defendants to be required to conduct LGBTQ+ sensitivity training and/or training in how to provide competent and respectful medical care and/or coverage to transgender individuals, and any further relief that this Court determines to be just, proper, and equitable.

**COUNT X:**
**DISCRIMINATION IN VIOLATION OF THE AMERICANS WITH DISABILITIES ACT, AS AMENDED, 42 U.S.C. § 12101, *et seq.***

**(PLAINTIFFS, JANE DOE AND JOHN DOE v. DEFENDANT, INDEPENDENCE BLUE CROSS)**

186. Plaintiffs restate and reallege all previous paragraphs as though fully set forth here.

187. Defendant, Independence Blue Cross, discriminated against Plaintiff, Jane Doe, based on her disability, gender dysphoria, in violation of Title I of the ADA, 42 U.S.C. § 12111, *et seq.*, which prohibits discrimination including, Plaintiffs contend, the unequal and discriminatory provision of health insurance benefits based on actual or perceived disability that are offered by an employer, a labor organization, or the agent of an employer or of a labor organization. Further, Plaintiff, John Doe, was discriminated against by Defendant, Independence Blue Cross, based on his association with an individual with a disability, his partner, Plaintiff, Jane Doe.

188. Under the plain language of 42 U.S.C. § 12111(5)(A), the term "employer" is expressly defined as "a person engaged in an industry affecting commerce who has 15 or more employees for each working day in each of 20 or more calendar weeks in the current or preceding calendar year, ***and any agent of such a person*** … ." 42 U.S.C. § 12111(5)(A) (emphasis added). Further, "covered entity" under the ADA is defined as "an employer, employment agency, labor organization, or joint labor-management committee." 42 U.S.C. § 12111(2). Defendant, Independence Blue Cross, is alleged to be an "agent" of an employer or of a labor organization within the meaning of § 12111(5)(A) and/or § 12111(2). In fact, health insurance benefits constitute an important and a major part of the employment relationship today.

189. 42 U.S.C. § 121112(a) prohibits discrimination by any "covered entity" with respect to "other terms, conditions, and privileges of employment." 42 U.S.C. § 121112(a). Defendant, Independence Blue Cross, discriminated against Plaintiffs in the "other terms,

conditions, and privileges" of employment in Plaintiff, John Doe's, capacity as a member of a labor organization, with respect to the health insurance benefits offered to Plaintiff, John Doe, and of which his partner, Plaintiff, Jane Doe, was rightfully a beneficiary under the health insurance plan administered and underwritten by Defendant, Independence Blue Cross.

190. Plaintiff, Jane Doe, is a qualified individual with a disability under the ADA, and Plaintiff, John Doe, is associated with an individual with a disability under the ADA, his partner, Plaintiff, Jane Doe.  Plaintiff, Jane Doe, suffers from a disability, gender dysphoria, within the meaning of the ADA.  Plaintiff, Jane Doe's, gender dysphoria constitutes a disability under the ADA because gender dysphoria is a physical or a mental impairment that substantially limits one or more major life activities.  42 U.S.C. § 12102(1).

191. Plaintiff, Jane Doe, was clinically diagnosed with gender dysphoria and has clinically significant distress associated with being transgender.  The substantial limitation on Plaintiff, Jane Doe's, major life activities include limitations in social and occupational functioning.

192. Defendant, Independence Blue Cross, denied medically necessary gender affirming care and treatment for Plaintiff, Jane Doe's, gender dysphoria disability.  Defendant, Independence Blue Cross, in practice, singled out Plaintiff, Jane Doe, and other people who are transgender who suffer from gender dysphoria for unequal treatment by creating a barrier for them to access medical services to treat their gender dysphoria disability.

193. Defendant, Independence Blue Cross, in practice, drew a line between procedures sought as a form of gender affirming care and treatment, and other procedures, and specifically excluded the aforementioned gender affirming procedures for Plaintiff, Jane Doe, and other transgender people with a gender dysphoria diagnosis.  Defendant, Independence Blue Cross,

applied its exclusion for cosmetic procedures in a way that discriminates against diagnoses of gender dysphoria and discriminated against Plaintiff, Jane Doe, solely on the basis of that diagnosis.

194.    Plaintiffs seek redress for Defendant, Independence Blue Cross's, violation of Plaintiffs' rights under 42 U.S.C. §12133.

**WHEREFORE**, Plaintiffs, John Doe and Jane Doe, request judgment in favor of Plaintiffs and against Defendant, Independence Blue Cross, individually, and/or jointly and severally, in an amount in excess of $150,000.00, which will fully and fairly compensate Plaintiffs for any and all out-of-pocket costs/expenses, actual damages, economic harm, compensatory damages for emotional distress, mental anguish, pain and suffering, humiliation and embarrassment, loss of enjoyment of life and life's pleasures, punitive damages, attorneys' fees, expert witness fees, costs of suit, pre-and post-judgment interest, and equitable/injunctive relief requiring Defendant, Independence Blue Cross, to cover facial feminization surgery, hair transplant, and related procedures for Plaintiff, Jane Doe, and to provide such coverage on an equal and non-discriminatory basis to transgender individuals who suffer from gender dysphoria, for Defendant, Independence Blue Cross, to be required to conduct LGBTQ+ sensitivity training and/or training in how to provide competent and respectful medical care and/or coverage to transgender individuals, and any further relief that this Court determines to be just, proper, and equitable.

**COUNT XI:**
**DISCRIMINATION BASED ON DISABILITY IN VIOLATION OF THE PHILADELPHIA FAIR PRACTICES ORDINANCE ("PFPO"), CHAPTER 9-1100, SECTION 9-1101, *et seq.*, OF THE PHILADELPHIA CODE**
**(PLAINTIFFS, JANE DOE AND JOHN DOE v. DEFENDANTS, EASTERN ATLANTIC STATES COUNCIL OF CARPENTERS; EASTERN ATLANTIC STATES CARPENTERS HEALTH FUND; EASTERN ATLANTIC STATES COUNCIL OF CARPENTERS, LOCAL 251; WESTERN PENNSYLVANIA REGIONAL DISTRICT COUNCIL; EASTERN ATLANTIC STATES CARPENTERS TECHNICAL CENTERS; UNITED BROTHERHOOD OF CARPENTERS AND JOINERS OF AMERICA; ASSOCIATED CONSTRUCTION CARPENTERS OF NEW JERSEY; AND GENERAL**

**BUILDING CONTRACTORS ASSOCIATION)**

195. Plaintiffs restate and reallege all previous paragraphs as though fully set forth here.

196. Defendants, Eastern Atlantic States Council of Carpenters; Eastern Atlantic States Carpenters Health Fund; Eastern Atlantic States Council of Carpenters, Local 251; Western Pennsylvania Regional District Council; Eastern Atlantic States Carpenters Technical Centers; United States Brotherhood of Carpenters and Joiners of America; Associated Construction Carpenters of New Jersey; and/or General Building Contractors Association, discriminated against Plaintiff, Jane Doe in violation of the Philadelphia Fair Practices Ordinance ("PFPO"), at Section 9-1101, *et seq.*, of the Philadelphia Code.

197. Defendants, Eastern Atlantic States Council of Carpenters; Eastern Atlantic States Council of Carpenters, Local 251; Western Pennsylvania Regional District Council; Eastern Atlantic States Carpenters Technical Centers; United States Brotherhood of Carpenters and Joiners of America; Associated Construction Carpenters of New Jersey; and/or General Building Contractors Association, constitute an "employer" within the meaning of the PFPO, at § 9-1102(h).

198. The aforementioned Defendants, alternatively, constitute a "labor organization" within the meaning of the PFPO, at § 9-1102(n), which defines a "labor organization" as, "Any organization which exists for the purpose, in whole or in part, of collective bargaining or of dealing with employers concerning grievances, terms, or conditions of employment or of other mutual aid or protection in relation to employment."  § 9-1102(n).

199. The PFPO also makes it an "unlawful employment practice" "[f]or any person to aid, abet, incite, induce, compel or coerce the doing of any unlawful employment practice … or to attempt directly or indirectly to commit any act declared by this Section to be an unlawful employment practice."  § 9-1103(1)(h).  Further, the PFPO further defines an "[e]mployer"

as "[a]ny person who does business in the City of Philadelphia through employees or who employs one or more employees … ."  § 9-1102(1)(h).  The aforementioned Defendants, including Defendant, Eastern Atlantic States Carpenters Health Fund, each constitute a "person" within the meaning of the PFPO.

200.   The aforementioned Defendants engaged in "discrimination," as defined by the terms of the PFPO, which prohibits, in pertinent part, "discrimination" that is defined to include "[a]ny direct or indirect practice of exclusion … distinction, restriction … limitation, refusal, denial, differentiation or preference in the treatment of a person on the basis of actual or perceived … disability."  § 9-1102(e).  Denial of health insurance benefits within a health plan offered by an employer on the basis of gender dysphoria fits within this definition.  In fact, health insurance benefits are an important and a major part of the employment relationship today.

201.   The PFPO defines "disability" as, "With respect to an individual, a physical or mental impairment that substantially limits one or more of his or her major life activities, a record of such an impairment, or being regarded as having such an impairment."  § 9-1102(d).

202.   The PFPO, in pertinent part, makes it an "unlawful employment practice" "[f]or any employer to … otherwise discriminate against any individual, with respect to … terms, conditions or privileges of employment or with respect to any matter directly or indirectly related to employment."  § 9-1103(1)(a).  Denial of health insurance benefits on the basis of gender dysphoria within a health plan offered by an employer fits within this definition.

203.   The PFPO also makes it an "unlawful employment practice" "[f]or any labor organization to discriminate against any individual or to limit, segregate or classify its membership in any way which would deprive such individual of employment opportunities, limit his or her employment opportunities or otherwise adversely affect his or her status as an employee or as an applicant for employment or adversely affect his or her … conditions of employment."

70

§ 9-1103(1)(c).

204. The aforementioned Defendants discriminated against Plaintiff, Jane Doe, on the basis of Plaintiff, Jane Doe's, gender dysphoria disability by wrongfully denying health insurance coverage to Plaintiff, Jane Doe, for facial feminization surgery, hair transplant, and related procedures to treat her gender dysphoria condition.

205. On May 16, 2025, Defendant, Independence Blue Cross, provided Plaintiff, Jane Doe, with an Initial Denial Letter denying her request for pre-authorization for facial feminization surgery on the basis that such surgery was cosmetic and not medically necessary which is not accurate, is not in accordance with the WPATH guidelines or the medical consensus on the subject matter, and constitutes discrimination.

206. Defendants, Eastern Atlantic States Council of Carpenters; Eastern Atlantic States Council of Carpenters, Local 251; Western Pennsylvania Regional District Council; Eastern Atlantic States Carpenters Technical Centers; United States Brotherhood of Carpenters and Joiners of America; Associated Construction Carpenters of New Jersey; and/or General Building Contractors Association, adopted a discriminatory insurance plan that does not permit coverage of facial feminization procedures to treat an individual diagnosed with gender dysphoria. The aforementioned Defendants discriminated against Plaintiff, Jane Doe, on the basis of Ms. Doe's gender dysphoria by wrongfully denying health insurance coverage to Ms. Doe for facial feminization surgery, hair transplant, and related procedures, with respect to the health benefit plan offered to Plaintiff, John Doe, and with respect to which Plaintiff, Jane Doe, was rightfully a beneficiary.

207. Defendants, Eastern Atlantic States Council of Carpenters; Eastern Atlantic States Carpenters Health Fund; Eastern Atlantic States Council of Carpenters, Local 251; Western Pennsylvania Regional District Council; Eastern Atlantic States Carpenters Technical

Centers; United States Brotherhood of Carpenters and Joiners of America; Associated Construction Carpenters of New Jersey; and/or General Building Contractors Association's, discriminatory acts described herein resulted in disparate treatment of the aforementioned Defendants' employees, members, and beneficiaries of Defendants' health benefit plan based on gender dysphoria in violation of the PFPO. The aforementioned Defendants denied medically necessary gender affirming care and treatment for Plaintiff, Jane Doe's, gender dysphoria disability. The aforementioned Defendants, in practice, singled out Plaintiff, Jane Doe, and other people who are transgender who suffer from gender dysphoria for unequal treatment by creating a barrier for them to access medical services to treat their gender dysphoria disability.

208. Defendants, Eastern Atlantic States Council of Carpenters; Eastern Atlantic States Carpenters Health Fund; Eastern Atlantic States Council of Carpenters, Local 251; Western Pennsylvania Regional District Council; Eastern Atlantic States Carpenters Technical Centers; United States Brotherhood of Carpenters and Joiners of America; Associated Construction Carpenters of New Jersey; and/or General Building Contractors Association, in practice, drew a line between procedures sought as a form of gender affirming care and treatment, and other procedures, and specifically excluded the aforementioned gender affirming procedures for Plaintiff, Jane Doe, and other transgender people with a gender dysphoria diagnosis. The aforementioned Defendants applied the exclusion for cosmetic procedures in a way that discriminates against diagnoses of gender dysphoria and discriminated against Plaintiff, Jane Doe, solely on the basis of that diagnosis.

**WHEREFORE**, Plaintiffs, John Doe and Jane Doe, request judgment in favor of Plaintiffs and against Defendants, Eastern Atlantic States Council of Carpenters; Eastern Atlantic States Carpenters Health Fund; Eastern Atlantic States Council of Carpenters, Local 251; Western

Pennsylvania Regional District Council; Eastern Atlantic States Carpenters Technical Centers; United States Brotherhood of Carpenters and Joiners of America; Associated Construction Carpenters of New Jersey; and/or General Building Contractors Association, individually, and/or jointly and severally, in an amount in excess of $150,000.00, which will fully and fairly compensate Plaintiffs for any and all out-of-pocket costs/expenses, actual damages, economic harm, compensatory damages for emotional distress, mental anguish, pain and suffering, humiliation and embarrassment, loss of enjoyment of life and life's pleasures, punitive damages, attorneys' fees, expert witness fees, costs of suit, pre-and post-judgment interest, and equitable/injunctive relief requiring Defendants to cover facial feminization surgery, hair transplant, and related procedures for Plaintiff, Jane Doe, and to provide such coverage on an equal and non-discriminatory basis to transgender individuals who suffer from gender dysphoria, for Defendants to be required to conduct LGBTQ+ sensitivity training and/or training in how to provide competent and respectful medical care and/or coverage to transgender individuals, and any further relief that this Court determines to be just, proper, and equitable.

**COUNT XII:**
**DISCRIMINATION BASED ON DISABILITY IN VIOLATION OF THE PHILADELPHIA FAIR PRACTICES ORDINANCE ("PFPO"), CHAPTER 9-1100, SECTION 9-1101,** *et seq.***, OF THE PHILADELPHIA CODE**
**(PLAINTIFFS, JANE DOE AND JOHN DOE v. DEFENDANT, INDEPENDENCE BLUE CROSS)**

209.    Plaintiffs restate and reallege all previous paragraphs as though fully set forth herein.

210.    Defendant, Independence Blue Cross, discriminated against Plaintiffs in violation of the PFPO, at Section 9-1101, *et seq.*, of the Philadelphia Code.

211.    The PFPO makes it an "unlawful employment practice" "[f]or any person to aid, abet, incite, induce, compel or coerce the doing of any unlawful employment practice … or to attempt directly or indirectly to commit any act declared by this Section to be an unlawful employment practice." § 9-1103(1)(h).

212. The PFPO further defines an "[e]mployer" as "[a]ny person who does business in the City of Philadelphia through employees or who employs one or more employees … ."  § 9-1102(1)(h).

213. On May 16, 2025, Defendant, Independence Blue Cross, provided Plaintiff, Jane Doe, with an Initial Denial Letter denying her request for pre-authorization for facial feminization surgery on the basis that such surgery was cosmetic and not medically necessary which is not accurate, is not in accordance with the WPATH guidelines or the medical consensus on the subject matter, and constitutes discrimination.

214. Plaintiff, Jane Doe, subsequently appealed the discriminatory denial of coverage contained in the Defendant, Independence Blue Cross's, Initial Denial Letter to Plaintiff.  Defendant, Independence Blue Cross, nevertheless upheld the decision to wrongfully deny Plaintiff, Jane Doe, coverage on appeal.

215. Plaintiff, Jane Doe, submitted a request for a further external review of the decision which was controlled by Defendant, Independence Blue Cross.  It was not truly independent.  The external review was still denied.  Plaintiff, Jane Doe's, request was denied, she contends, on account of discrimination against her based on her gender dysphoria diagnosis.

216. Before being forced to institute this litigation, Plaintiff even filed a civil rights complaint internally with Defendant, Independence Blue Cross, as was indicated could be done in the policy.  However, Plaintiff, Jane Doe's, efforts were futile.  Defendant, Independence Blue Cross, found there to be no discrimination, and no civil rights violation, with respect to the denial, and wrongfully upheld the denial of the claim.  However, Defendant, Independence Blue Cross's, actions clearly constitute discrimination.

217. Defendant, Independence Blue Cross, illegally discriminated against Plaintiff, Jane Doe, by refusing to extend insurance coverage to Plaintiff, Jane Doe, for facial feminization surgery,

hair transplant, and related procedures as part of the health insurance plan administered and underwritten by Defendant, Independence Blue Cross, which was offered to Plaintiff, John Doe, and of which Plaintiff, Jane Doe, who is the partner of Plaintiff, John Doe, was rightfully a beneficiary.

218.  Defendant, Independence Blue Cross's, discriminatory acts described herein resulted in disparate treatment of employees, members, and beneficiaries of the health benefit plan administered and underwritten by Defendant, Independence Blue Cross, based on gender dysphoria in violation of the PFPO.  Defendant, Independence Blue Cross, denied medically necessary gender affirming care and treatment for Plaintiff, Jane Doe's, gender dysphoria disability.  Defendant, Independence Blue Cross, in practice, singled out Plaintiff, Jane Doe, and other people who are transgender who suffer from gender dysphoria for unequal treatment by creating a barrier for them to access medical services to treat their gender dysphoria disability.

219.  Defendant, Independence Blue Cross, in practice, drew a line between procedures sought as a form of gender affirming care and treatment, and other procedures, and specifically excluded the aforementioned gender affirming procedures for Plaintiff, Jane Doe, and other transgender people with a gender dysphoria diagnosis. Defendant, Independence Blue Cross, applied its exclusion for cosmetic procedures in a way that discriminates against diagnoses of gender dysphoria and discriminated against Plaintiff, Jane Doe, solely on the basis of that diagnosis.

**WHEREFORE**, Plaintiffs, John Doe and Jane Doe, request judgment in favor of Plaintiffs and against Defendant, Independence Blue Cross, individually, and/or jointly and severally, in an amount in excess of $150,000.00, which will fully and fairly compensate Plaintiffs for any and all out-of-pocket costs/expenses, actual damages, economic harm, compensatory damages for emotional

75

distress, mental anguish, pain and suffering, humiliation and embarrassment, loss of enjoyment of life and life's pleasures, punitive damages, attorneys' fees, expert witness fees, costs of suit, and equitable/injunctive relief requiring Defendant, Independence Blue Cross, to cover facial feminization surgery, hair transplant, and related procedures for Plaintiff, Jane Doe, and to provide such coverage on an equal and non-discriminatory basis to transgender individuals who suffer from gender dysphoria, for Defendant, Independence Blue Cross, to be required to conduct LGBTQ+ sensitivity training and/or training in how to provide competent and respectful medical care and/or coverage to transgender individuals, and any further relief that this Court determines to be just, proper, and equitable.

**COUNT XIII:**
**VIOLATION OF § 502(a)(1)(B) OF THE EMPLOYEE RETIREMENT INCOME SECURITY ACT ("ERISA"), 29 U.S.C. § 1132(a)(1)(B), DENIAL OF BENEFITS (PLAINTIFFS, JANE DOE AND JOHN DOE v. DEFENDANTS, EASTERN ATLANTIC STATES COUNCIL OF CARPENTERS; EASTERN ATLANTIC STATES CARPENTERS HEALTH FUND; EASTERN ATLANTIC STATES COUNCIL OF CARPENTERS, LOCAL 251; WESTERN PENNSYLVANIA REGIONAL DISTRICT COUNCIL; EASTERN ATLANTIC STATES CARPENTERS TECHNICAL CENTERS; UNITED BROTHERHOOD OF CARPENTERS AND JOINERS OF AMERICA; ASSOCIATED CONSTRUCTION CARPENTERS OF NEW JERSEY; AND GENERAL BUILDING CONTRACTORS ASSOCIATION)**

220.    Plaintiffs restate and reallege all previous paragraphs as though fully set forth herein.

221.    It is believed and therefore averred that the plan, the Eastern Atlantic States Carpenters Health Fund, offered by Defendants, Eastern Atlantic States Council of Carpenters; Eastern Atlantic States Carpenters Health Fund; Eastern Atlantic States Council of Carpenters, Local 251; Western Pennsylvania Regional District Council; Eastern Atlantic States Carpenters Technical Centers; United States Brotherhood of Carpenters and Joiners of America; Associated Construction Carpenters of New Jersey; and/or General Building Contractors Association, constitutes an employee benefit plan covered by ERISA.

222.    Plaintiff, John Doe, was, at all times relevant hereto, a participant of the plan, and his

partner, Plaintiff, Jane Doe, was rightfully a beneficiary under the terms of the plan.

223. On May 16, 2025, Defendant, Independence Blue Cross, provided Plaintiff, Jane Doe, with an Initial Denial Letter denying her request for pre-authorization for facial feminization surgery on the basis that such surgery was cosmetic and not medically necessary which is not accurate, is not in accordance with the World Professional Association for Transgender Health ("WPATH") guidelines or the medical consensus on the subject matter, and constitutes discrimination.

224. Plaintiff, Jane Doe, was wrongfully denied insurance benefits for facial feminization surgery, hair transplant, and related procedures under the terms of the plan. It was incorrectly determined that Plaintiff, Jane Doe, could not demonstrate that the coverage sought was for procedures that were medically necessary as opposed to cosmetic. It was incorrectly determined that Plaintiff, Jane Doe, sought cosmetic surgeries when Plaintiff did not. At all times relevant hereto, Plaintiff, Jane Doe, sought coverage for surgeries that were medically necessary and not cosmetic to treat Plaintiff, Jane Doe's, gender dysphoria. Plaintiff, Jane Doe, was improperly denied benefits under the plan because the terms of the plan were incorrectly applied.

225. Defendants improperly required the showing of a purported physiological "functional impairment" which does not correctly apply the actual language of the policy in Plaintiff, Jane Doe's case, or in the case of transgender individuals suffering from gender dysphoria. *See Doe v. Independence Blue Cross*, No. 23-1530, 2024 WL 233216, at *3 (E.D. Pa. Jan. 22, 2024) ("IBX's gender dysphoria policy does not limit 'functional impairment' to physiological defects. IBX's own definition of gender dysphoria refers to '[c]linically significant distress or impairment in social, occupational, or other important areas of functioning.'"). Pursuant to the language of Defendant, Independence Blue Cross's,

policy relating to coverage for the treatment of gender dysphoria, a clear "functional impairment" included impairments in social functioning and occupational functioning as "gender dysphoria" was clearly defined in Defendant, Independence Blue Cross's, aforementioned policy as, "Clinically significant distress or impairment in social, occupational, or other important areas of functioning." *See* Medical Policy, at Exhibit "C," pages 4-5 ("Clinically significant distress or impairment in social, occupational, or other important areas of functioning"). Plaintiff, Jane Doe's, functional impairments consisted of functional impairments in social and occupational functioning, and, therefore, Plaintiff, Ms. Doe, should have been covered under the plain terms of the plan. As Plaintiff, Ms. Doe's, impairments in social and occupational functioning were functional in nature, and were clearly and plainly covered under the terms of the plan, benefits were therefore wrongfully denied to Plaintiff, Ms. Doe, in violation of § 502(a)(1)(B) of ERISA.

**WHEREFORE**, Plaintiffs, John Doe and Jane Doe, request judgment in favor of Plaintiffs and against Defendants, Eastern Atlantic States Council of Carpenters; Eastern Atlantic States Carpenters Health Fund; Eastern Atlantic States Council of Carpenters, Local 251; Western Pennsylvania Regional District Council; Eastern Atlantic States Carpenters Technical Centers; United States Brotherhood of Carpenters and Joiners of America; Associated Construction Carpenters of New Jersey; and/or General Building Contractors Association, individually, and/or jointly and severally, in an amount in excess of $150,000.00, which will fully and fairly compensate Plaintiffs for any and all out-of-pocket costs/expenses, actual damages, economic harm, any expenses incurred by Plaintiffs the recovery of which would place the Plaintiffs in the same position but for discrimination, attorneys' fees, expert witness fees, costs of suit, pre-and post-judgment interest, and equitable/injunctive relief requiring the plan to insure Plaintiff and other transgender people with gender dysphoria for facial feminization

surgeries, hair transplant, and related procedures on an equal and non-discriminatory basis; equitable/injunctive relief requiring that Plaintiff, Jane Doe, will be covered for facial feminization surgeries, hair transplant, and related procedures, and will be covered and all benefits paid moving forward; to adopt and enforce a written policy, procedure, rule, or guideline to this effect; to immediately order a re-evaluation of Plaintiff, Jane Doe's, claim for the purposes of evaluating Plaintiff, Jane Doe's, claim on an equal and non-discriminatory basis; equitable/injunctive relief requiring the aforementioned Defendants to be required to conduct LGBTQ+ sensitivity training and/or training in how to provide competent and respectful medical care and/or coverage to transgender individuals, and any further relief that this Court determines to be just, proper, and equitable.

**COUNT XIV:**
**VIOLATION OF § 502(a)(1)(B) OF THE EMPLOYEE RETIREMENT INCOME SECURITY ACT, 29 U.S.C. § 1132(a)(1)(B), DENIAL OF BENEFITS (PLAINTIFFS, JANE DOE AND JOHN DOE v. DEFENDANT, INDEPENDENCE BLUE CROSS)**

226. Plaintiffs restate and reallege all previous paragraphs as though fully set forth herein.

227. Defendant, Independence Blue Cross, is a proper defendant under ERISA pursuant to *Doe v. Independence Blue Cross*, No. 23-1530, 2024 WL 233216 (E.D. Pa. Jan. 22, 2024). It is believed and therefore averred that the plan administered and underwritten by Defendant, Independence Blue Cross, constitutes an employee benefit plan covered by ERISA.

228. Plaintiff, John Doe, was, at all times relevant hereto, a participant of the plan, and his partner, Plaintiff, Jane Doe, was rightfully a beneficiary under the terms of the plan.

229. On May 16, 2025, Defendant, Independence Blue Cross, provided Plaintiff, Jane Doe, with an Initial Denial Letter denying her request for pre-authorization for facial feminization surgery on the basis that such surgery was cosmetic and not medically necessary which is

not accurate, is not in accordance with the World Professional Association for Transgender Health ("WPATH") guidelines or the medical consensus on the subject matter, and constitutes discrimination.

230. Plaintiff, Jane Doe, subsequently appealed the denial of coverage contained in the Defendant, Independence Blue Cross's, Initial Denial Letter to Plaintiff.  Defendant, Independence Blue Cross, nevertheless upheld the decision to wrongfully deny Plaintiff, Jane Doe, coverage on appeal.

231. Plaintiff, Jane Doe, submitted a request for a further external review of the decision which was controlled by Defendant, Independence Blue Cross.  It was not truly independent.  The external review was still denied.  Plaintiff, Jane Doe's, request was denied, she contends, despite the fact that she was clearly covered under the plain terms of the plan.

232. Before being forced to institute this litigation, Plaintiff even filed a civil rights complaint internally with Defendant, Independence Blue Cross, as was indicated could be done in the policy.  However, Plaintiff, Jane Doe's, efforts were futile.  Defendant, Independence Blue Cross, found there to be no discrimination, and no civil rights violation, with respect to the denial, and wrongfully upheld the denial of the claim.

233. Plaintiff, Jane Doe, was wrongfully denied insurance benefits for facial feminization surgery, hair transplant, and related procedures under the terms of the plan.  It was incorrectly determined that Plaintiff, Jane Doe, could not demonstrate that the coverage sought was for procedures that were medically necessary as opposed to cosmetic.  It was incorrectly determined that Plaintiff, Jane Doe, sought cosmetic surgeries when Plaintiff did not.  At all times relevant hereto, Plaintiff, Jane Doe, sought coverage for surgeries that were medically necessary and not cosmetic to treat Plaintiff, Jane Doe's, gender dysphoria.  Plaintiff, Jane Doe, was improperly denied benefits under the plan because the

terms of the plan were incorrectly applied.

234. Defendant, Independence Blue Cross, improperly required the showing of a purported physiological "functional impairment" which does not correctly apply the actual language of the policy in Plaintiff, Jane Doe's case, or in the case of transgender individuals suffering from gender dysphoria. *See Doe v. Independence Blue Cross*, No. 23-1530, 2024 WL 233216, at *3 (E.D. Pa. Jan. 22, 2024) ("IBX's gender dysphoria policy does not limit 'functional impairment' to physiological defects. IBX's own definition of gender dysphoria refers to '[c]linically significant distress or impairment in social, occupational, or other important areas of functioning.'"). Pursuant to the language of Defendant, Independence Blue Cross's, policy relating to coverage for the treatment of gender dysphoria, a clear "functional impairment" included impairments in social functioning and occupational functioning as "gender dysphoria" was clearly defined in Defendant, Independence Blue Cross's, aforementioned policy as, "Clinically significant distress or impairment in social, occupational, or other important areas of functioning." *See* Medical Policy, at Exhibit "C," pages 4-5 ("Clinically significant distress or impairment in social, occupational, or other important areas of functioning"). Plaintiff, Jane Doe's, functional impairments consisted of functional impairments in social and occupational functioning, and, therefore, Plaintiff, Ms. Doe, should have been covered under the plain terms of the plan. As Plaintiff, Ms. Doe's, impairments in social and occupational functioning were functional in nature, and were clearly and plainly covered under the terms of the plan, benefits were therefore wrongfully denied to Plaintiff, Ms. Doe, in violation of § 502(a)(1)(B) of ERISA.

**WHEREFORE**, Plaintiffs, John Doe and Jane Doe, request judgment in favor of Plaintiffs and against Defendant, Independence Blue Cross, individually, and/or jointly and

severally, in an amount in excess of $150,000.00, which will fully and fairly compensate Plaintiffs for any and all out-of-pocket costs/expenses, actual damages, economic harm, any expenses incurred by Plaintiffs the recovery of which would place the Plaintiffs in the same position but for discrimination, attorneys' fees, expert witness fees, costs of suit, pre-and post-judgment interest, and equitable/injunctive relief requiring the plan to insure Plaintiff and other transgender people with gender dysphoria for facial feminization surgeries, hair transplant, and related procedures on an equal and non-discriminatory basis; equitable/injunctive relief requiring that Plaintiff, Jane Doe, will be covered for facial feminization surgeries, hair transplant, and related procedures, and will be covered and all benefits paid moving forward; to adopt and enforce a written policy, procedure, rule, or guideline to this effect; to immediately order a re-evaluation of Plaintiff, Jane Doe's, claim for the purposes of evaluating Plaintiff, Jane Doe's, claim on an equal and non-discriminatory basis; equitable/injunctive relief requiring Defendant, Independence Blue Cross, to be required to conduct LGBTQ+ sensitivity training and/or training in how to provide competent and respectful medical care and/or coverage to transgender individuals, and any further relief that this Court determines to be just, proper, and equitable.

## VI.    JURY DEMAND

Plaintiffs hereby request a trial by jury of eight (8) members on all counts so triable.

DATED: 06/05/2026                    Respectfully submitted,

Justin Robinette, Esquire
PA Supreme Court I.D. No. 319829
One Liberty Place,
1650 Market Street, Suite 3600
PMB #2494
Philadelphia, PA 19103
Tel: (267) 595-6254
Fax: (267) 592-3067

Justin@JRobinetteLaw.com

*Attorney for Plaintiffs,*
*John Doe and Jane Doe*

**<u>VERIFICATION</u>**

I hereby declare under penalty of perjury that I am the Plaintiff, Jane Doe, in the within action and that the statements made in the foregoing Complaint are true and correct to the best of my knowledge, information, and belief.

Executed on: 06/04/2026 _____        By: ████████  ████████
Jun 4, 2026 21:15:37 EDT)
Ms. ████████

## <u>VERIFICATION</u>

I hereby declare under penalty of perjury that I am the Plaintiff, John Doe, in the within action and that the statements made in the foregoing Complaint are true and correct to the best of my knowledge, information, and belief.

06/04/2026

Executed on: _____    By: ▮▮▮▮▮▮▮▮▮▮ (Jun 4, 2026 19:06:52 EDT)

Mr. ▮▮▮▮▮▮▮▮

## CERTIFICATE OF SERVICE

I, <u>JUSTIN F. ROBINETTE, ESQUIRE</u>, attorney for the Plaintiffs in the above captioned matter, hereby certify that a true and correct copy of the foregoing document was filed with the Court and served together with the Court-issued Summons by personal service/hand delivery upon the Defendants on the date set forth below, or as soon thereafter as service can be effectuated.

Respectfully submitted,

DATED: 06/05/2026                    BY:

Justin Robinette, Esquire
*Attorney for Plaintiffs*